925 P.2d 1354

**Brent M. SWANSON and Darlene Swanson, husband and wife, Plaintiffs–Appellees/Cross–Appellants,**

**v.**

**SAFECO TITLE INSURANCE COMPANY, a California corporation, Defendant–Appellant/Cross–Appellee.**

**No. 1 CA–CV 93–0459.**

Court of Appeals of Arizona,
Division 1,
Department E.

Aug. 3, 1995.

Redesignated as Opinion and
Publication Ordered Nov. 1, 1995.

Mariscal, Weeks, McIntyre & Friedlander, P.A. by Donald N. McIntyre, Michael S. Rubin, Phoenix, for Defendant–Appellant/Cross–Appellee.

Thomas A. Stoops & Associates, P.C. by Thomas A. Stoops, Diana L. Clarke, Phoenix, for Plaintiffs–Appellees/Cross–Appellants.

## OPINION

McGREGOR, Judge.

Safeco Title Insurance Company (Safeco) appeals from the trial court's grant of partial summary judgment in favor of Brent and Darlene Swanson (Swansons). Swansons cross-appealed, alleging that the trial court applied an erroneous measure of damages.

Because we find that genuine issues of material fact exist, we conclude that the trial court erred in granting partial summary judgment and, therefore, reverse.

### I.

In 1983, Swansons purchased real property located in Maricopa County for $180,000. Swansons partially financed the purchase with a promissory note secured by a deed of trust in favor of the seller. Prior to Swansons' purchase, John Vernon Jenkinson had been named as the beneficiary on a deed of trust involving an easement over part of the property. This deed of trust encumbering the property (the Jenkinson lien) reflected a balance due on a promissory note of $100,-000. Apparently, the Jenkinson lien was satisfied before the events giving rise to this action; however, no release of the deed of trust was ever recorded.[1]

When Swansons purchased the property, they obtained title insurance through Safeco. The policy, which insured against any loss or damages resulting from, among other things, "[a]ny defect in or lien or encumbrance on [the] title," did not list the Jenkinson lien as an exception. The policy provided that the amount recoverable by an insured was the lesser of the actual loss to the insured or the amount of the policy.

In 1987, Swansons attempted to refinance the loan on the property through Erisa Mortgage Corporation (Erisa). Erisa submitted Swansons' loan application to a lender, Union National Bank of Colorado, and recommended approval of the loan.

---

1. After the lien was satisfied, the collection agent neglected to record a release of the lien.

As part of the refinancing process, Guardian Title prepared a title report, which showed that Swansons did not have clear title to the property because of the Jenkinson lien. Swansons allegedly notified Safeco of the defect in the title, which Swansons claimed placed the refinancing in jeopardy.

While the refinancing transaction was pending and Guardian Title was attempting to obtain Jenkinson's consent to remove the cloud from the title, Swansons received a notice of a trustee's sale. In December 1987, the trustee conducted a sale, and title to the property was conveyed to the original seller as the highest bidder.

Swansons brought this action for damages against Safeco, alleging that, because of the cloud on the title, they were unable to obtain refinancing and therefore lost the property through foreclosure. Swansons moved for partial summary judgment on the issue of liability. The trial court determined as a matter of law that Safeco was liable for Swansons' loss and granted the motion.

At trial on the issue of damages, the trial court determined that, because the equity measure of damages was greater than the out-of-pocket loss to Swansons, Swansons were entitled to the equity measure of damages. The trial court calculated Swansons' loss as the fair market value ($140,000) less encumbrances ($108,649.52), for a total loss of $31,350.48.

Safeco filed this appeal, challenging the trial court's grant of summary judgment on the issue of liability. Swansons cross-appealed, challenging the trial court's measure of damages.

We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12–2101.B.

## II.

### A.

■ To grant a motion for summary judgment, the trial court must find that no genuine issue of material fact exists in the record and that the moving party is entitled to judgment on the merits as a matter of law. *Orme Sch. v. Reeves,* 166 Ariz. 301, 305, 802 P.2d 1000, 1004 (1990). In reviewing a trial court's ruling on a motion for summary judgment, we view the facts in a light most favorable to the party opposing the judgment. *Grain Dealers Mut. Ins. Co. v. James,* 118 Ariz. 116, 118, 575 P.2d 315, 317 (1978). We must reverse a trial court's grant of summary judgment if our review reveals that reasonable inferences about material facts could be resolved in favor of the party opposing the judgment. *United Bank v. Allyn,* 167 Ariz. 191, 195, 805 P.2d 1012, 1016 (App.1990).

Safeco argues that the evidence before the trial court raised material issues of fact as to Safeco's liability, and thus, summary judgment was inappropriate. We agree that reasonable inferences about material facts could be resolved in Safeco's favor.[2]

■ The first issue we address is whether Swansons gave Safeco adequate notice of the defect in the title. The title insurance policy requires the insured to notify Safeco promptly in writing if the insured becomes aware of any claim of title or interest adverse to the insured's title that might cause loss or damage for which Safeco could be liable. The policy also states that

[i]f such prompt notice shall not be given to the Company, then as to such insured all liability of the Company shall cease and terminate in regard to the matter or matters for which prompt notice is required; provided, however, that failure to notify shall in no case prejudice the rights of any such insured under this policy unless the Company shall be prejudiced by such failure and then only to the extent of such prejudice.

To support their motion for summary judgment, Swansons submitted an affidavit from Dan R. Morris, Swansons' attorney for the refinancing transaction. Morris stated that he provided the required written notice to Safeco of the title defect. Although he

---

**2.** At oral argument, Safeco requested this court not only to reverse the trial court's ruling, but also to enter judgment in favor of Safeco. Because we find material issues of fact exist, we decline to do so.

could not testify that he remembered mailing the notice and could not produce a signed copy of the notice, Morris explained the normal business procedure his office uses when mailing a letter. Safeco, however, submitted an affidavit from James Barry, counsel for Security Title Agency,[3] denying that Security Title or Safeco ever received notice of the claim of the title defect. The affidavit provided sufficient information about Barry's knowledge and access to Security Title's business records to permit a trier of fact to conclude that Security Title did not receive written notice of the defect.

Because the policy limits Safeco's liability to those situations in which it receives notice, whether Safeco had notice of the claim is a material fact. Drawing all reasonable inferences in favor of Safeco as the nonmoving party, we cannot conclude as a matter of law that Safeco received adequate notice.

■ We consider next whether Swansons established, as a matter of law, that they sustained an actual loss as a result of the Jenkinson lien. The title insurance policy excludes liability if no loss existed:

> Failure to furnish ... proof of loss or damage shall terminate any liability of the Company under this policy as to such loss or damage.

In granting summary judgment, the trial court apparently separated the issue of liability from the issue of damages. However, the clear terms of the policy do not permit liability without damages. Nothing in the record at the time of summary judgment indicates whether the court determined that any damages resulted from the Jenkinson lien, and the record before us reveals a material factual dispute between the parties concerning whether the Jenkinson lien caused any of the damage for which Swansons seek recovery. Material issues of fact thus preclude the conclusion that Safeco was liable as a matter of law.

We do not intend our discussion of the above examples of issues of material fact to be exhaustive; the examples serve to illustrate that material issues of fact remain as to whether Safeco is liable to Swansons.

**3.** Security Title Agency is the agent for Safeco.

Therefore, the trial court erred in granting partial summary judgment on the issue of Safeco's liability.

As part of its appeal, Safeco contends that the trial court erred in awarding attorneys' fees. Because we reverse the trial court's grant of summary judgment, we also reverse the award of attorneys' fees, without prejudice to the trial court awarding appropriate fees at the close of litigation.

## B.

On cross-appeal, Swansons argue that the trial court erred in determining the measure of damages. Although we reverse the trial court's grant of summary judgment, in the interest of judicial economy, we address the measure of damages to apply in the event Swansons prevail.

Swansons argue that they are entitled to the greater of the equity measure of damages or their "out-of-pocket" loss. They assert that the trial court erred in determining that the equity measure of damages was greater. Safeco argues that the evidence supported the trial court's findings and that the equity measure of damages—the fair market value less encumbrances—was proper. We do not believe that either measure correctly reflects damages, if any, as contemplated by the policy.

The title insurance policy states that Safeco's liability shall not exceed the least of "the actual loss of the insured claimant" or "the amount of insurance stated in Schedule A [$180,000]...." However, nothing in the policy defines the method for calculating "actual loss."

■ Whether the terms of an insurance policy are ambiguous is a question of law for the court to decide. *Thomas v. Liberty Mut. Ins. Co.*, 173 Ariz. 322, 324, 842 P.2d 1335, 1337 (App.1992). Any ambiguities are subject to a construction most favorable to the insured. *Id.* at 325, 842 P.2d at 1338. We agree that the term "actual loss" is ambiguous, and if Swansons have suffered damages for which Safeco is liable, an interpretation of

the term "actual loss" most favorable to Swansons is appropriate.

We know of no cases in Arizona that have interpreted the phrase "actual loss" in a title insurance policy. However, we find opinions from other jurisdictions instructive.

The measure of an insured's loss due to a title encumbrance ordinarily is the insured's expenses incurred to remove the encumbrance. *Miebach v. Safeco Title Ins. Co.,* 49 Wash.App. 451, 743 P.2d 845, 847 (1987). However, this measure of damages proves unsatisfactory when the encumbrance either is not or cannot be removed. In that case, the insured's damage does not result from the cost to remove the cloud on the title; rather, any damage results from the existence of the cloud itself. *Overholtzer v. Northern Counties Title Ins. Co.,* 116 Cal. App.2d 113, 253 P.2d 116, 122 (Cal.Dist.Ct. App.1953). "If that cloud impairs the market value of the land, the [insureds] are entitled to whatever damages resulted from that cloud." *Id.* Title insurance does not guarantee perfect title; instead, it pays damages, if any, caused by any defects to title that the title company should have discovered but did not. In this respect, title insurance is comparable to other types of insurance: for example, fire insurance does not guarantee that a homeowner will not have a fire, only that if a fire occurs, he can recover for damages, if any, that the fire caused.

We believe that the rule announced in *Overholtzer,* and followed by other jurisdictions, provides the proper measure of damages. In *Overholtzer,* the court held that the measure of damages was the depreciation in market value caused by the existence of the title defect. *Id.* at 124. In other words, the insured's loss, if any, is the difference between the fair market value of the proper-

ty if no impairment existed and the fair market value of the property with the impairment. *Id.; Hartman v. Shambaugh,* 96 N.M. 359, 630 P.2d 758, 761 (1981); *L. Smirlock Realty Corp. v. Title Guarantee Co.,* 97 A.D.2d 208, 469 N.Y.S.2d 415, 426 (1983); *Southern Title Guaranty Co. v. Prendergast,* 478 S.W.2d 806, 809 (Tex.Civ.App.1972).

Here, Swansons argue that the Jenkinson lien prevented Swansons from refinancing the property and, thus, caused a loss. However, Swansons' ability to refinance their loan is not an issue in measuring damages. Rather, Swansons' loss, if any, resulted from the existence of the Jenkinson lien. If that lien diminished the fair market value of the property, then Swansons are entitled to the difference between the fair market value of the property without the lien and the fair market value with the lien.[4]

Having defined the appropriate measure of damages, the next issue we consider is the proper date for the trial court to use in determining the value of the property. Other jurisdictions are not in agreement as to the date for valuation. *Hartman,* 630 P.2d at 761. Some use the date of purchase, some use the date of a bona fide contract of sale by the insured, and some use the date the title defect was discovered. *Id.; see, e.g., Prendergast,* 478 S.W.2d at 810 (using the date of purchase to calculate actual loss). We believe this last option is the most appropriate.

It seems quite apparent to us that liability should be measured by diminution in the value of the property caused by the defect in the title as of the date of the discovery of the defect, measured by the use to which the property is then devoted. When a purchaser buys property and buys title insurance, he is buying protection against defects in title to the property.

4. Swansons have cited no case law to support their theory of measuring damages by "out-of-pocket" loss; neither party cites to any case other than *Miebach* to support the theory of measuring damages as the fair market value minus encumbrances, nor does either party cite any authority to support the proposition that the court should compare these two measures and award the greater amount. We decline to adopt a rule that would measure damages under title insurance differently in every case, comparing the "out-of-pocket" losses and the "loss of equity." As evidenced by the parties' arguments, these terms can be as ambiguous as the term "actual loss." Moreover, to provide a different measure of damages in every case might cause inconsistent results. Furthermore, the insured may be awarded damages that were not foreseeable to the insurer or contemplated by the parties at the time the policy was issued, such as lost profits and consequential damages.

He is trying to protect himself then and for the future against loss if the title is defective. The policy necessarily looks to the future. . . . The insured, when he purchases the policy, does not then know that the title is defective. But later, after he has improved the property, he discovers the defect. Obviously, up to the face amount of the policy, he should be reimbursed for the loss he suffered in reliance on the policy, and that includes the diminution in value of the property as it then exists, in this case with improvements. Any other rule would not give the insured the protection for which he bargained and for which he paid.

*Overholtzer*, 253 P.2d at 125; *Hartman*, 630 P.2d at 762; see *L. Smirlock Realty*, 469 N.Y.S.2d at 427 (noting majority of jurisdictions use date of defect discovery to measure loss).

Here, Swansons discovered the defect in July 1987. Therefore, the difference in the market value of the property with and without the Jenkinson lien as of that date is the appropriate measure of damages.

### C.

Safeco has requested attorneys' fees incurred from this appeal pursuant to A.R.S. section 12–341.01 and Ariz.R.Civ.App.P. 21.c. We exercise our discretion and decline to award attorneys' fees.

### III.

Based on the foregoing, we reverse the trial court's grant of summary judgment and award of attorneys' fees.

CONTRERAS, P.J., and MELVYN T. SHELLEY, J.,* concur.

---

* Retired Judge Melvyn T. Shelley was authorized to participate in this appeal by order of the Chief Justice of the Arizona Supreme Court pursuant