Rockingham
No. 2010-129

DARLENE GRAY

v.

COMMONWEALTH LAND TITLE INSURANCE COMPANY

Argued: January 20, 2011
Opinion Issued: May 26, 2011

*Smith-Weiss Shepard, P.C.*, of Nashua (*Robert M. Shepard* on the brief and orally), for the plaintiff.

*Wiggin & Nourie, P.A.*, of Manchester (*Meredith P. Cook* and *Jennifer Turco Beaudet* on the brief, and *Ms. Cook* orally), for the defendant.

DUGGAN, J. The plaintiff, Darlene Gray, appeals an order of the Superior Court (*Nicolosi*, J.) granting a motion to dismiss by the defendant, Commonwealth Land Title Insurance Company (the insurer). We affirm.

The record supports the following facts. In July 2003, the plaintiff and her sister, in their capacity as trustees of the Ocean Estates Realty Trust (Ocean Estates), received a quitclaim deed from the Triple "P" Ranch Realty Trust (Ranch Trust). The deed, which was recorded in December 2003, purported to convey to Ocean Estates a parcel of land located in Candia. The plaintiff testified that Ocean Estates paid approximately $80,000 or $90,000 for the parcel.

On December 18, 2003, Ocean Estates conveyed to the plaintiff a warranty deed to the parcel. At the same time she received the deed, she obtained a construction loan and granted a mortgage to Residential Mortgage Services, Inc. (the lender) in the amount of $243,000. She also purchased a title insurance policy from the insurer, which provided $328,000 in coverage against a title defect. The policy identified the plaintiff as the insured and was effective as of December 22, 2003.

In June 2006, after incurring additional expenditures for site engineering work and a septic design plan in preparation for construction on the parcel, the plaintiff learned that Ranch Trust had never acquired title to the property and that the State of New Hampshire legally owned it. Both the plaintiff and the lender subsequently filed claims with the insurer, which retained an appraiser to value the property. The appraiser prepared a report in September 2007, which found that the subject property "is not a legal, buildable lot" because it is located "in an area of poorly drained soils" and has "less than 200 [feet] of town maintained road frontage." Based upon this, the appraiser concluded that the property had a fair market value of $15,000 as of the date of the plaintiff's claim.

The insurer subsequently tendered payment of $15,000 to the lender, maintaining that its liability was limited to the fair market value of the property. The plaintiff then filed a breach of contract claim against the insurer. She argued that the policy required the insurer to pay her for all expenses she incurred in preparing to build on the property prior to learning of the title defect, up to her coverage limit of $328,000. These claimed expenses, some of which pre-dated the policy, included costs to

have the land cleared, payments to Ranch Trust, septic design planning, additional site work, insurance premiums, and monthly mortgage payments to the lender.

The court held a bench trial, at which only the plaintiff testified during her case-in-chief. She attempted to call the insurer's expert witness, Peter Stanhope, to testify regarding the fair market value of the property, but the court granted the insurer's motion to preclude his testimony. At the conclusion of the plaintiff's case, the court granted the insurer's motion to dismiss. The court determined that the policy covered "actual monetary loss or damage," which it interpreted as the fair market value of the property at the time the title defect was discovered. Because the plaintiff did not present any testimony or an expert opinion on the fair market value of the property, the court concluded that she did not meet her burden of proof and granted the insurer's motion. The plaintiff then filed a motion for reconsideration, which the court denied.

The plaintiff advances three arguments on appeal. She first contends that because she suffered a catastrophic or complete loss of title, the trial court erred in determining that she could recover only the fair market value of the property as of the date the title defect was discovered. Second, she asserts that the trial court unsustainably exercised its discretion in prohibiting her from calling the insurer's expert witness as an expert during her case. Finally, she assigns error to the court's granting of the insurer's motion to dismiss at the conclusion of her case-in-chief.

I

■ The interpretation of insurance policy language is a question of law, which we review *de novo*. *Webster v. Acadia Ins. Co.*, 156 N.H. 317, 319 (2007). We construe the language as would a reasonable person in the position of the insured based upon a more than casual reading of the policy as a whole. *Id.* at 319-20.

Section 7, the relevant portion of the plaintiff's insurance policy, provides that:

> This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the insured claimant who has suffered loss or damage by reason of matters insured against by this policy and only to the extent herein described.
>
> > (a) The liability of the Company under this policy shall not exceed the least of:
> >
> > (i) the Amount of Insurance stated in Schedule A; or

> (ii) the difference between the value of the
> insured estate or interest as insured and the
> value of the insured estate or interest subject
> to the defect, lien or encumbrance insured
> against by this policy.

The plaintiff contends that the court misconstrued this section and applied the incorrect measure of damages. She argues that because she suffered a complete loss of title, section 7(a)(i) of the policy entitles her to "out-of-pocket damages and expenses or actual damages" that she incurred as a result of the title defect. She asserts that the court incorrectly limited her damages based upon section 7(a)(ii).

The plaintiff misreads the policy. Section 7 initially limits an insured's recovery to the "actual monetary loss or damage sustained or incurred by the insured claimant." Section 7(a) then provides an additional limitation on that recovery, which applies only if the insured's "actual monetary loss or damage" exceeds the maximum amount of insurance provided for in Schedule A, $328,000, or "the difference between the value of the insured estate . . . as insured and the value of the insured estate . . . subject to the defect, lien or encumbrance insured against by [the] policy."

Thus, the court correctly read section 7 in its entirety as a limitation on the plaintiff's damages based upon the "actual monetary loss or damage" she sustained. The court determined that the plaintiff suffered a total loss and that her "actual monetary loss or damage" was the property's fair market value. However, because the plaintiff failed to present any testimony or expert opinion regarding the property's fair market value, the court concluded that she failed to establish her "actual monetary loss or damage." Accordingly, contrary to the plaintiff's assertion, the court did not apply the further limitations of section 7(a) at all. We agree with this interpretation.

Section 7 establishes that the insurer was liable up to the policy limits, but not necessarily for the policy limits. See Allison v. Ticor Title Ins. Co., 907 F.2d 645, 651 (7th Cir. 1990) (interpreting a similar policy provision). While we have never construed the terms "actual monetary loss or damage" within an insurance policy, other courts deciding this issue have determined that actual loss for a complete failure of title is the fair market value of the property. Id. at 652; RTC Mortg. Trust 1994 N-1 v. Fidelity Nat. Title, 58 F. Supp. 2d 503, 534 (D. N.J. 1999); Sims v. Sperry, 835 P.2d 565, 572 (Colo. Ct. App. 1992). In the absence of the title defect, the plaintiff could have sold the property only for its fair market value, and any recovery in excess of the fair market value would provide the plaintiff a windfall. Allison, 907 F.2d at 651.

■ While the plaintiff contends she incurred numerous out-of-pocket expenses because of the title defect, she would have likely incurred these same uncompensated expenses regardless of any title defect because her property later proved to be unbuildable. "Title insurance does not guarantee perfect title; instead, it pays damages, if any, caused by any defects to title that the title company should have discovered but did not." *Swanson v. Safeco Title Ins. Co.*, 925 P.2d 1354, 1358 (Ariz. Ct. App. 1995). Accordingly, the plaintiff's "actual monetary loss or damage" cannot exceed "the price [the property] would have fetched if unimpaired." *Allison*, 907 F.2d at 651.

## II

The plaintiff next argues that the court erred in refusing to allow her to call Stanhope as a witness during her case-in-chief. Prior to trial, the insurer disclosed the opinions of Stanhope, its valuation expert. Stanhope determined that the plaintiff's property "is not a legal, buildable lot," but he did not offer an opinion regarding the possible value of the property if it was a buildable lot. At trial, the plaintiff attempted to call Stanhope to offer an opinion regarding the value of the property as a buildable lot. However, the plaintiff informed the insurer of her intention to offer expert testimony just a month before the trial, and even then, she did not disclose the opinion that she intended to elicit from Stanhope.

The plaintiff argued to the trial court that she intended to elicit testimony regarding "a range of what [the property] would be worth if it was a buildable lot." She contended that Stanhope offered similar testimony at his deposition, but acknowledged that he was only asked to "give a ballpark of what he believed [the property] might be worth" as a buildable lot and had not performed a specific market analysis. The trial court refused to allow Stanhope's testimony.

We review the trial court's decision to exclude proposed expert testimony for an unsustainable exercise of discretion. *Figlioli v. R.J. Moreau Cos.*, 151 N.H. 618, 626 (2005). To meet this standard, the plaintiff must demonstrate that the trial court's ruling was clearly untenable or unreasonable to the prejudice of her case. *Id.*

■ A party is "entitled to disclosure of an opposing party's experts, the substance of the facts and opinions about which they are expected to testify, and the basis of those opinions." *Id.* The failure to produce such information should result in its exclusion unless "good cause is shown to excuse the failure to disclose." *Id.* Here, the plaintiff failed to give the insurer adequate notice that she intended to call Stanhope as a witness or of the substance of his testimony. Specifically, the plaintiff did not disclose that she intended to elicit testimony from Stanhope regarding the value of the property as a

buildable lot until the middle of the trial. While the plaintiff contends that Stanhope disclosed his opinion during his September 2009 deposition, this testimony occurred nearly five months after the expert disclosure deadline of May 1, 2009, and the plaintiff did not inform the insurer that she intended to again elicit that opinion from Stanhope until the middle of trial. *See Baker Valley Lumber v. Ingersoll-Rand*, 148 N.H. 609, 617-18 (2002) (trial court properly disallowed portion of expert testimony where identity of expert and his opinion were disclosed, but expert's opinion on a particular subject was withheld); *In the Matter of Letendre & Letendre*, 149 N.H. 31, 37-38 (2002) (trial court properly excluded expert testimony where identity of expert was disclosed but opinion was not).

■■ Additionally, expert testimony must rise to a threshold level of reliability in order to be admissible. *Baxter v. Temple*, 157 N.H. 280, 284 (2008). Thus, the trial court must find that the testimony is "based upon sufficient facts or data," is "the product of reliable principles and methods," and that the expert has "applied the principles and methods reliably to the facts of the case." RSA 516:29-a (2007). The plaintiff acknowledged that Stanhope could only provide a "ballpark" range of what the property might be worth. As the trial court concluded, "[Stanhope] did not conduct a market analysis of the lot as a buildable one nor did he offer an expert opinion of the same." Accordingly, the court did not commit an unsustainable exercise of discretion in concluding that the proffered testimony did not meet the requisite standard for expert reliability.

■ The plaintiff also contends that even if Stanhope could not have testified regarding the fair market value of the property if it was buildable, he could have testified regarding the sale prices of three similar parcels located near the subject property. However, we have already concluded that the trial court properly determined the measure of damages to be the fair market value of the property on the date of loss. Accordingly, the proffered testimony was irrelevant, as the plaintiff did not present any evidence that the lot was buildable and thus the trial court did not unsustainably exercise its discretion in prohibiting such testimony.

### III

Finally, the plaintiff argues that the trial court erred in granting the insurer's motion to dismiss at the conclusion of her case-in-chief. She contends that in ruling on a motion to dismiss the court must "assume that all of the opponents [*sic*] well-pleaded allegations of fact and reasonable inferences to be drawn therefrom are true and can be proved" and that "[t]he court will construe those allegations and inferences in a manner most

favorable to the [p]laintiff." Accordingly, she asserts that the court "totally disregarded" her testimony and exhibits.

 The plaintiff cites the incorrect standard of review for a motion to dismiss at the close of her case-in-chief. The standard the court typically applies at the close of the plaintiff's case-in-chief takes "the evidence presented and determine[s] if, viewed most favorably to the non-moving party, it establishes a *prima facie* case." *Renovest Co. v. Hodges Development Corp.*, 135 N.H. 72, 75 (1991). However, we have also recognized a different standard of review for a motion to dismiss following the plaintiff's case in a bench trial. *See id.* at 75-77.

> A motion to dismiss, made to the judge in a jury-waived trial at the close of the plaintiff's case, can challenge the plaintiff's case in either of two ways. . . . One, directed at the judge in his role as judge, is used to assess the legal sufficiency of the case, and is measured by the familiar *prima facie* standard, taking all evidence introduced and resolving all conflicts in the plaintiff's favor. The second, however, is a broader one, asking the judge, as the trier of facts, for an expedited disposition. On such a motion, the judge is permitted to render a verdict for the defendant, on the merits, at the close of the plaintiff's case. Should the judge choose to address the case on the merits at that time, the judge should make findings of fact and assess whether the plaintiff has carried his or her burden by a preponderance of the evidence.
>
> . . . .
>
> In a case where the judge is also serving as the trier of fact, the judge can halt the trial at the close of the plaintiff's case when he or she determines that the facts, as presented, will not be sufficient to meet the burden of establishing the case. The judge need not review the evidence by the *prima facie* standard to see if the plaintiff *might* meet the burden, based on possible findings of fact, but rather, as the trier of fact, can evaluate whether the plaintiff has actually met the burden to the court's satisfaction.

*Id.* at 76-77.

 While the insurer would prevail under either motion to dismiss standard, the trial court correctly applied the second standard as the insurer moved for "a directed verdict to dismiss the case." As the trier of fact, the court assessed whether the plaintiff carried her burden by a preponderance of the evidence and concluded that she had not. The court

first determined that the correct measure of damages was the property's fair market value on the date the title defect was discovered. Because the plaintiff had not presented any testimony or an expert opinion regarding the property's fair market value, the court properly concluded that the plaintiff had not met her burden of proof on that issue and granted the insurer's motion. *See Clipper Affiliates v. Checovich*, 138 N.H. 271, 274 (1994) (in reviewing a motion to dismiss at the close of the plaintiff's case in a jury-waived trial "we will not set aside the trial court's findings of fact unless they are clearly erroneous and will not reverse the dismissal unless it is inconsistent with the findings or contrary to law").

*Affirmed.*

DALIANIS, C.J., and CONBOY and LYNN, JJ., concurred.