IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

FIRST AMERICAN TITLE INSURANCE COMPANY, a California
corporation, *Plaintiff/Appellee*,

*v.*

JOHNSON BANK, a Wisconsin bank registered in Arizona,
*Defendant/Appellant*.

No. 1 CA-CV 14-0190
FILED 6-30-2015

Appeal from the Superior Court in Maricopa County
No. CV2013-003634
The Honorable Robert H. Oberbillig, Judge

**REVERSED AND REMANDED**

COUNSEL

Lake & Cobb, P.L.C., Tempe
By Richard L. Cobb, Joseph J. Glenn
*Counsel for Plaintiff/Appellee*

Ridenour Hienton, P.L.L.C., Phoenix
By William G. Ridenour, Damien R. Meyer
*Counsel for Defendant/Appellant*

---

## OPINION

Judge Lawrence F. Winthrop delivered the opinion of the Court, in which Presiding Judge Kent E. Cattani and Judge Peter B. Swann joined.

---

**W I N T H R O P,** Judge:

¶1 Johnson Bank appeals the superior court's order granting summary judgment in favor of First American Title Insurance Company ("First American"). Johnson Bank alleges the superior court erred when it determined the date for calculating loss under a lender title insurance policy as the date of foreclosure. For the following reasons, we reverse the superior court's grant of summary judgment and remand for proceedings consistent with this opinion.

### FACTS AND PROCEDURAL HISTORY

¶2 First American issued two title insurance policies to Johnson Bank on December 2, 2005, and June 19, 2006. These policies insured Johnson Bank's interest in two properties held by The Equitable Troon K, LLC ("Troon K property") and Three Sticks Management Group LLC ("Troon H property") (collectively, "the owners").[1] The policies insured the Troon K property for $1,000,000 and the Troon H property for $1,050,000, which reflected the exact amounts Johnson Bank loaned to the owners. First American issued separate title insurance policies to the owners of the properties.

¶3 In 2008, the owners sued First American to recover damages under their owners' title insurance policies, alleging certain undisclosed covenants, conditions, and restrictions ("CC&R's") existed that prohibited commercial development on both properties. The owners then defaulted on their obligations to Johnson Bank, and on September 22, 2010, Johnson Bank obtained title to the two parcels through foreclosure credit bids of

---

[1] These policies stated in relevant part: "[First American] insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of: . . . 2. Any defect in or lien or encumbrance on the title."

$55,000 for Troon K and $47,000 for Troon H. In October 2011, Johnson Bank provided First American with notice of title claims under its lenders' title insurance policies, asserting the CC&R's prevented both properties from being developed for commercial purposes, and that these CC&R's were not listed exceptions to the title insurance policies.

¶4        The parties agreed to arbitrate the damages claims, but could not agree on the comparative starting date for calculating the alleged diminution in value of the subject parcels. Johnson Bank argued that the date the loans were issued should be the date used to calculate any diminution in value, whereas First American argued that the date of foreclosure should be utilized for this calculation. In April 2013, First American sought declaratory relief in superior court to determine the proper date to measure diminution in value to foreclosed properties under lender's title insurance policies in Arizona. Johnson Bank answered and filed a counterclaim seeking the same declaratory relief.

¶5        The parties filed cross motions for summary judgment and, following oral argument, the superior court determined the date of comparative valuation for diminution of value of the two parcels was the date of foreclosure. After entry of a stipulated final judgment, Johnson Bank timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-2101(A)(1) and (B).[2]

## ANALYSIS

¶6        Johnson Bank raises two issues on appeal, alleging the superior court erred when it (1) granted summary judgment in favor of First American, holding that the proper starting date to measure the diminution of a property is the date of foreclosure; and (2) determined that a lender is precluded from asserting reliance on information contained in the title insurance policy to establish contract damages under the title insurance policies.[3]

---

[2]        We cite the current version of rules and statutes if no revisions material to our decision have occurred since the relevant dates.

[3]        Johnson Bank argues the superior court erred when it concluded the bank could not assert reliance on information in the title insurance policies to establish contract damages. Based on the record before this court, it appears that, while the superior court and counsel at oral argument discussed the issue of reliance, no final ruling prohibiting Johnson Bank

*I.     Date of Valuing the Diminution of Property Value*

**¶7**            We review a motion for summary judgment *de novo*, construing the facts and inferences in the light most favorable to the party against whom judgment was entered. *Brookover v. Roberts Enter., Inc.*, 215 Ariz. 52, 55, ¶ 8, 156 P.3d 1157, 1160 (App. 2007) (internal citations omitted). "We review *de novo* the interpretation of insurance contracts." *First Am. Title Ins. Co. v. Action Acquisitions, LLC*, 218 Ariz. 394, 397, ¶ 8, 187 P.3d 1107, 1110 (2008) (internal citation omitted).

**¶8**            We note at the outset that "[t]itle insurance does not guarantee perfect title; instead, it pays damages, if any, caused by any defects to title that the title company should have discovered but did not." *Swanson v. Safeco Title Ins. Co.*, 186 Ariz. 637, 641, 925 P.2d 1354, 1358 (App. 1995). Moreover, title insurance does not "guarantee either that the mortgaged premises are worth the amount of the mortgage or that the mortgage debt will be paid." *First Am. Bank v. First Am. Transp. Title Ins. Co.*, 759 F.3d 427, 433 (5th Cir. 2014) (internal citation omitted).

**¶9**            This court has previously held the date for valuing a property under an owner's title insurance policy is the date the title defect is discovered. *See Swanson*, 186 Ariz. at 641, 925 P.2d at 1358. That opinion is consistent with a majority of other jurisdictions regarding the date of property valuation under owners' title insurance policies. *See id.* at 642, 925 P.2d at 1359. This does not, however, answer the question raised in this appeal, as an owner is in a different position than a lender. *See CMEI, Inc. v. Am. Title Ins. Co.*, 447 So. 2d 427, 428 (Fla. Dist. Ct. App. 1984) (identifying substantial differences between the insured interest of an owner and a lender).

**¶10**          The relevant insurance policies contain no specific applicable language, and there is no statute or other binding legal precedent in Arizona that determines the starting date of comparative valuation of property for calculating covered losses under a lender's title insurance policy.

**¶11**          Johnson Bank argues that First American's policies are ambiguous because the policies do not specify the date on which the property should be valued in the event of a covered loss. The superior court resolved the purported ambiguity in favor of First American, holding the

from asserting reliance on this information to establish contract damages was issued. Accordingly, we decline to address this argument.

date of foreclosure was the date to measure the diminution in value of a property. A number of jurisdictions that have considered this issue hold the date of foreclosure is the appropriate date to measure the value of property.[4] A lesser number of courts have adopted the view that the date of the loan is the proper comparative date to use in calculating diminution in value of subsequently foreclosed property.[5]

¶12 The standard title insurance policy provision in question is Section 7(a)(iii), which states: "(a) The liability of the Company under this policy shall not exceed the least of . . . (iii) the difference between the value of the insured estate or interest as insured and the value of the insured estate or interest subject to the defect, lien or encumbrance insured by this policy."[6] The failure of the provision to specify the date the loss is to be calculated creates an ambiguity.[7] We interpret an ambiguous clause by looking to social policy and the transaction as a whole. *First Am. Title Ins. Co.*, 218 Ariz. at 397, ¶ 8, 187 P.3d at 1110. Following that analytical process, this court will construe any remaining ambiguity against the insurer. *Id.*

¶13 Johnson Bank urges this court to adopt the reasoning in *Equity Income Partners LP v. Chicago Title Ins. Co.*, 2012 WL 3871505 (D. Ariz. Sept. 6, 2012), an unpublished opinion from the federal district court. In *Equity Income Partners*, Equity loaned over two million dollars to the owners of two properties. *Id.* at *1. Equity obtained lender's title insurance from Chicago Title. *Id.* The owners of the properties discovered they were precluded

---

[4]    *See e.g. Karl v. Commonwealth Land Title Ins. Co.*, 20 Cal.App.4th 972, 985, 24 Cal.Rptr.2d 912, 920 (Cal.Ct.App. 1993); *First Am. Bank*, 759 F.3d at 432-34; *Associated Bank, N.A. v. Stewart Title Guar. Co.*, 881 F. Supp. 2d 1058, 1066-67 (D. Minn. 2012); *First Tennessee Bank Nat'l Ass'n v. Lawyers Title Ins., Corp.*, 282 F.R.D. 423, 427 (N.D. Ill. 2012); *First Internet Bank of Indiana v. Lawyers Title Ins. Co.*, 2009 WL 2092782 at *6-7 (S.D. Ind. July 13, 2009).

[5]    *See e.g. Citicorp Sav. of Illinois v. Stewart Title Guar. Co.*, 840 F.2d 526 (7th Cir. 1988).

[6]    The parties do not dispute that this section delineates the method to calculate Johnson Bank's loss under the title insurance policy.

[7]    The superior court also referenced First American's failure to include a date of valuation during oral argument, stating, "[i]nsurance companies know how to write sentences that say 'on the date of foreclosure' in them. I don't know why they don't."

from legally accessing the properties and stopped making loan payments to Equity. *Id.* Equity filed suit against Chicago Title, alleging the starting point for valuation of the properties should be the date that Equity learned of the undisclosed defects. *Id.* at *2. Chicago Title argued that the date of foreclosure should determine the diminution in value to the properties. *Id.* The federal district court held the date of the loan was the proper valuation date, relying on the court's analysis in *Citicorp Sav. of Illinois v. Stewart Title Guar. Co.*, which reasoned that "because the policy was breached at the time of the loan, the title insurer should bear any risk of market value decline in the property at that time." *Id.* at *4 (internal citation and punctuation omitted).

**¶14**　　　We agree with the reasoning in *Equity Income Partners* and hold that, where the undisclosed defect in title has caused the borrower's default, the date of the loan is the proper date to measure a property's diminution in value as a result of the undisclosed title defect. The facts in *Equity Income Partners* and *Citicorp* present substantially similar situations to those presented here, and differ from those facts under which other jurisdictions have used the date of foreclosure as the date to measure diminution in value. *See First Am. Bank*, 759 F.3d at 433. In *Equity Income Partners* and *Citicorp*, and as seen here, the undisclosed title defect frustrated the intended use of the property, and was the direct cause of the borrower's default and subsequent foreclosure by the lender. Because such default is a result of the undisclosed title defect, the title insurer should bear the consequences of that default, not the lender. *See Equity Income Partners* at *4; *see also Christopher B. Frantze, Equity Income Partners LP v. Chicago Title Ins. Co. and Recovery Under a Lender's Title in a Falling Real Estate Market*, 48 Real Prop. Tr. & Est. L.J. 391, 405 (2013).

**¶15**　　　Additionally, the policies provide the recovery amount will be "the difference between the value of the insured estate or interest *as insured* and the value of the insured estate or interest subject to the defect." (Emphasis added.) The words "as insured" contained within this clause do not weigh in favor of holding the comparative valuation date as the date of foreclosure; rather, these words suggest the date of the loan and the contemporaneously-issued title insurance policy as the comparative date at which the property should be valued. Further, "[a]llowing the insurer to wait to value the [property] in a falling real estate market works to the insurer's benefit, a result that does not construe an ambiguity in the policy in favor of the insured." *In re Evans*, 460 B.R. 848, 899 (Bkrtcy. S.D. Miss. 2011), *disagreed with by First Am. Bank*, 759 F.3d at 432-34; *see* Barlow Burke, Law of Title Insurance § 7.04 (3rd ed. Aspen Publishers 2004) ("The choice of a date for measuring damages should not provide the insurer with an

6

opportunity to shield its eyes from the insured's actual, economic, and consequential losses.").

¶16        Unlike an owner, a lender stands to gain nothing when market forces cause property to appreciate. A lender purchases insurance to insure the value of its loan, not the value of a property. A rule that allows the insurer to benefit from market depreciation while facing no risk in the event of a rising market would not reflect the reasonable expectations of the contracting parties. But the rule we adopt here allows certain evaluation of the risks associated with the policy and therefore strikes a fair balance: each party to the insurance policy knows what the policy is worth, and how damages will be calculated. Our holding does not transform lenders' insurance policies into guarantors of future market property values that are the product of subsequent market fluctuation – liability under such policies is simply the difference between the value of the property without the insured defects at the time of the loan and the value of the property with the insured defects at the time of the loan.

¶17        Because First American failed to discover and timely disclose the CC&R's, the policy was breached at the time the loan was made. Using the date of the loan to measure any diminution in value will allow Johnson Bank to recover its loss where the default and resulting losses to the lender were caused by a covered title defect. *See* Joyce D. Palomar, 1 Title Ins. Law § 10:16 (2014-2015 ed.).

¶18        This opinion is consistent with the policies identified in *Swanson*. First, using the date of the loan allows recovery for the defects in title that First American "should have discovered but did not." *Swanson* at 641, 925 P.2d at 1358. In addition, "[a]ny other rule would not give the insured the protection for which he bargained and for which he paid." *Id.* at 642, 925 P.2d at 1359 (internal citation omitted). Under these specific circumstances and in the absence of a specified date of comparative valuation identified in the policies, we hold the date to measure any diminution in property value is the date of the loan. Accordingly, we reverse the superior court's grant of summary judgment in favor of First American and remand for entry of judgment in favor of Johnson Bank on this issue.

        II.    *Attorneys' Fees*

¶19        Both Johnson Bank and First American request an award of attorneys' fees and costs incurred on appeal and at the superior court pursuant to ARCAP 21(c), A.R.S. §§ 12-341 and 12-341.01. In the exercise of

our discretion, we deny both requests.  We do award Johnson Bank its costs on appeal subject to compliance with ARCAP 21.

## CONCLUSION

**¶20**	For the foregoing reasons, we reverse the superior court's grant of summary judgment and remand for proceedings consistent with this opinion.



Ruth A. Willingham · Clerk of the Court
FILED: ama