NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE
# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

CAMMIE L. MARCEAUX,
*Plaintiff/Appellant*,

*v.*

STEVEN BAKER, et al.,
*Defendants/Appellees*.

No. 1 CA-CV 18-0542
FILED 11-5-2019

---

Appeal from the Superior Court in Maricopa County
No. CV2017-053676
The Honorable John R. Hannah, Jr., Judge
The Honorable Theodore Campagnolo, Judge

**AFFIRMED**

---

COUNSEL

Cammie L. Marceaux, Fred, TX
*Plaintiff/Appellant*

Steven Baker, Phoenix
*Defendant/Appellee*

Kenneth R. Short, Sun City
*Defendant/Appellee*

Snell & Wilmer, LLP, Phoenix
By Gregory J. Marshall, Joshua Zimmerman, W. Danny Green,
Daniel J. Inglese
*Counsel for Defendants/Appellees Wells Fargo/ US Bank*

Fidelity National Law Group, Phoenix
By Patrick J. Davis, Jamey A. Thompson
*Counsel for Defendants/Appellees Fidelity/ Silver*

Warner, Angle, Hallam, Jackson & Formanek, PLC, Phoenix
By John A. Buric, Andrea M. Simbro
*Counsel for Defendant/Appellee Suburban*

Daniel R. Sanders, Sun City
*Defendant/Appellee*

Robert Stewart & Associates, PC, Phoenix
By Robert L. Stewart, Jr., Sid A. Horwitz
*Counsel for Defendant/Appellee Century 21*

------------------------------

**MEMORANDUM DECISION**

Judge Diane M. Johnsen delivered the decision of the Court, in which Presiding Judge Kenton D. Jones and Judge James B. Morse Jr. joined.

------------------------------

**J O H N S E N**, Judge:

**¶1**        Cammie L. Marceaux sued several entities and individuals, alleging they committed a fraud that prevented her from selling her home. The superior court eventually granted a series of motions to dismiss and entered judgment in favor of the defendants.  For the reasons that follow, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**        According to Marceaux's amended complaint ("complaint"), Steven Baker conveyed the home to her by warranty deed on March 9,

2006.[1] Marceaux borrowed $182,800 from Suburban Mortgage, Inc. to pay for the home and secured the debt by giving a deed of trust on the home. The beneficiary of the deed of trust was Mortgage Electronic Registration Systems, Inc. ("MERS"). Wells Fargo Home Mortgage later succeeded MERS as beneficiary and servicing agent for the loan.

**¶3** The complaint alleged Marceaux contracted to sell her home in 2017, but the sale did not go through because "the Owner . . . remained on title in hopes I would fall like all the property investors predicted everyone to do when they found out they bought a home that had an inflated mortgage." Her complaint attached a contract executed in April 2017 by which she was to sell the home for $205,000. Other documents attached to her complaint showed that the prospective buyer of the home had identified several items that needed to be repaired before the sale could go forward, along with an unspecified "inability to release the previous lien."

**¶4** Shortly after the sale fell through, Marceaux filed a claim with her title insurer, Fidelity National Title Insurance Company, alleging the title to her home was marred by a defect arising out of purported sales of the property in 2000, six years before she acquired the home. Fidelity accepted her claim and explained:

> On or about January 20, 1999, Shea Homes conveyed the [home] to Daniel Sanders via Special Warranty Deed. On February 15 2000, Daniel Sanders entered into an agreement for sale of the Property with Forrest Phillips and J.N. Phillips and on May 16, 2000, Forrest Phillips and J.N. Phillips entered into an agreement for sale of the Property to Eric Craig and Shannon Craig ("Craigs"). Although both of these purchase

---

[1] On review of the grant of a motion to dismiss pursuant to Arizona Rule of Civil Procedure 12(b), we consider *de novo* whether, as a matter of law, the plaintiff would be "entitled to relief under any interpretation of the facts susceptible of proof." *Coleman v. City of Mesa*, 230 Ariz. 352, 356, ¶ 8 (2012) (citation omitted). We look only to the complaint and documents attached to it, "assume the truth of all well-pleaded factual allegations and indulge all reasonable inferences from those facts." *Id.* at ¶ 9; *see Strategic Dev. & Constr., Inc. v. 7th & Roosevelt Partners, LLC*, 224 Ariz. 60, 64, ¶ 11 (App. 2010). Finally, we review only the allegations in Marceaux's amended complaint because that pleading superseded the original complaint. *Mohave Concrete & Materials, Inc. v. Scaramuzzo*, 154 Ariz. 28, 30 (App. 1987).

contracts were recorded, actual deeds conveying the Property were not recorded and title therefore remained in Daniel Sanders' name in the land records. However, on June 27, 2001, the Craigs nonetheless purported to convey the Property to Steve Baker via Quit Claim Deed. Steve Baker later purported to convey the Property to you on March 30, 2006 via Warranty Deed.

In settlement of Marceaux's claim, on July 31, 2017, Fidelity procured and recorded a quitclaim to her from the 1999 buyer of her home, Sanders, disposing of all of Sanders's interest in the home.

¶5 In the meantime, Marceaux had filed a complaint in superior court against Baker, who sold her the home, and other defendants, alleging fraud, quiet title and other claims. Two months later, she filed an amended complaint, alleging that after the sale of her home fell through, she stopped paying on her purchase money loan. At the time, she owed approximately $153,000 on the loan. As motion practice in the litigation ensued, a trustee's sale was noticed for her home. In March 2018, Marceaux sold the home herself before the trustee's sale took place.

¶6 By the time she sold the home, the superior court had entered an order dismissing several of the defendants. Marceaux thereafter moved the court to reconsider the dismissals, arguing she was pushed into selling her home when Wells Fargo threatened to foreclose on her loan. In connection with that motion, she filed a copy of a document dated April 30, 2018, titled "Property Securitization Analysis Report," by Certified Forensic Loan Auditors, LLC. The report traced Marceaux's original purchase money loan, identified the various mortgage servicing companies involved and the eventual assignment of the note and security, and concluded that the assignments of the note and the security were "invalid" and "suspect."

¶7 The superior court thereafter granted the remaining defendants' motions to dismiss. The court entered final judgment pursuant to Arizona Rule of Civil Procedure 54(c), and Marceaux timely appealed.[2] We have jurisdiction of the appeal pursuant to Article 6, Section 9, of the

---

[2] Although the court did not rule on Marceaux's motion for reconsideration, we deem the motion denied. *See State v. Mendoza-Tapia*, 229 Ariz. 224, 231, ¶ 22 (App. 2012).

Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2019) and -2101(A)(1) (2019).[3]

## DISCUSSION

**¶8**　　　In violation of Arizona Rule of Civil Appellate Procedure 13(a), Marceaux's briefs do not include appropriate references to the record and instead contain facts unsupported by the record in the superior court. Nor, in violation of Rule 13(a)(7)(A) and (B), does Marceaux present legal citations in support of her arguments on appeal or citations to the record to show she raised specific issues in the superior court. Although appellees urge us to affirm the judgment for that reason alone, we exercise our discretion to consider the merits of the appeal. *See Cal X-Tra v. W.V.S.V. Holdings, L.L.C.*, 229 Ariz. 377, 408, ¶ 103 & n.49 (App. 2012).[4]

**¶9**　　　Marceaux's complaint alleged she tried to sell her home in 2017 but was unable to do so because a title issue arose. She alleged the various defendants failed to tell her about the title defect. On appeal, Marceaux suggests her tenants moved out after she contracted with the prospective buyer in 2017. Thus, when the sale fell through, she lost rental income, was unable to make her monthly loan payments, and defaulted on the loan. She also asserts there are "eight unpaid securities owed on the property," but she does not identify those "securities"; nor does she allege she has made a title-insurance claim due to those "securities."

**¶10**　　　We will separately address her claims against the several defendants.[5]

---

[3]　　　Absent material revision after the relevant date, we cite the current version of a statute or rule.

[4]　　　For the same reason, we deny Century 21's motion to dismiss the appeal.

[5]　　　Marceaux's briefs contain many references and assertions about acts by various individuals and entities relating to the scheduled trustee's sale, which she argues forced her to sell the home, all of which occurred in 2018, after she filed her amended complaint. We will not address any of those references and assertions because her complaint and amended complaint alleged no claims relating to the noticed trustee's sale or to any purported lender-liability claim.

### A. Steven Baker.

**¶11** Marceaux argues that Baker, from whom she bought the home in 2006, actually "had no Valid Interest" in the home when he sold it to her. But, as the superior court ruled in dismissing her claims against Baker, "[t]he break in the title chain" that caused her to sue arose out of transactions that occurred years before Baker acquired the property. And Marceaux's complaint alleged no facts to support the bare conclusion that he knew about the title defect when he sold her the house. A plaintiff who alleges fraud must plead facts constituting the nine elements of fraud with particularity. Ariz. R. Civ. P. 9(b); *Steinberger v. Maricopa County*, 234 Ariz. 125, 141, ¶ 73 (App. 2014); *see Nielson v. Flashberg*, 101 Ariz. 335, 338-39 (1966) (stating elements). The complaint failed to adequately allege such facts against Baker.

### B. Suburban Mortgage.

**¶12** The complaint contained no specific allegations of wrongdoing against Suburban Mortgage; it alleged only that the Suburban Mortgage home loan was "serviced" by MERS, which Marceaux alleged was involved in a fraud by lenders, brokers and title agents. In granting Suburban Mortgage's motion to dismiss the complaint, the superior court ruled that Marceaux failed to allege any "facts that make out a cause of action."

**¶13** We agree. Although the complaint alleged that Suburban Mortgage arranged for MERS to service its loan, it alleged no facts to support any resulting claim.

**¶14** Marceaux argues there is a limited exception to the rule that fraud must be pled with particularity when the acts at issue are peculiarly within the knowledge of a corporate party. But the exception she cites does not apply when the complaint does not allege "*why* such information is peculiarly within a defendant's knowledge." *Steinberger*, 234 Ariz. at 142, ¶ 77. The complaint did not allege why the defect that developed in the title before Marceaux acquired the home was peculiarly within the knowledge of Suburban (or any other individual or entity she sued).

**¶15** Marceaux seems to contend that Suburban breached its contract with her by failing to convey title to her prospective buyer in 2017. As her lender, however, Suburban did not take title to her home and so could not have conveyed it to her buyer.

¶16         Finally, Marceaux argues that her claim is supported by allegations stated in her "Expert Witness Report." As we have stated, however, the issue on a motion to dismiss is whether the facts alleged in a complaint may state a claim. Marceaux did not file her "Expert Witness Report" with her complaint, so it is not relevant to the appeal.[6]

## C.     Century 21 Northwest Realty and Kenneth R. Short.

¶17         Marceaux's complaint alleged Century 21 and its agent, Kenneth Short, showed Marceaux the home in 2006. According to the complaint, Century 21 and Short fraudulently failed "to disclose specific [k]nowledge of [k]nown material facts" such as "the amount of sales and quit claim deeds." It alleged that if Marceaux had known of these "material facts," she would not have bought the home.

¶18         In response to the Century 21 motion to dismiss, Marceaux asserted that Short should have realized when he was "handed the file" that her mortgage was "inflated" and that "Steven Baker the Seller was not the rightful title owner." In granting the motion to dismiss, the superior court concluded the complaint failed to allege specific facts to support Marceaux's claim that Century 21 and Short fraudulently failed to disclose material facts.

¶19         On appeal, Marceaux raises the same arguments she did in the superior court, and adds that Short and Century 21 "had access to the 'DATA BASE'" but failed to tell her that Baker did not really own the home.

¶20         We agree with the superior court that Marceaux's complaint failed to allege facts sufficient to state a claim for fraud against Century 21 or Short. The complaint alleged no facts to explain why the amount of Marceaux's purchase money loan would put the real estate agents on notice of a prior defect in title. The "database" she mentions on appeal is not referenced in her complaint, and in any event, she does not explain the nature of that database or how it should have informed the real estate agents of the title defect.

---

[6]     That being said, we have independently reviewed Marceaux's "Expert Witness Report" and conclude it lacks specific facts sufficient to support a fraud claim against Suburban Mortgage or any of the other appellees.

### D.    Wells Fargo Home Mortgage and U.S. Bank.

**¶21**    Marceaux's complaint alleged an entity called Wells Fargo Home Mortgage, which was the servicer of her home loan, failed to tell her the "rightful title owner" by denying her access to "tax information" concerning the home.  The complaint also made similar claims against U.S. Bank National Association.  According to the complaint, Wells Fargo received a 2010 "Tax Information Statement" reflecting that Sanders owned the home, not Marceaux.  The complaint alleged Wells Fargo therefore committed fraud by concealing from her that Sanders "was the title owner on Tax records."  It also alleged Wells Fargo delayed responding to her request for information about the "investors" on her loan.

**¶22**    In granting Wells Fargo's motion to dismiss, the superior court ruled that the complaint failed to allege "'with particularity' what Wells Fargo did that constitutes fraud, as required by Civil Rule 9(b)."  We agree.  Marceaux did not allege she bought the home in reliance on any fraudulent misrepresentation by Wells Fargo, and any delay in responding to her request to know who had purchased her loan was likewise irrelevant to her decision to buy the home in the first place.  Moreover, Marceaux's arguments on appeal about a purported illegal assignment of the deed of trust in 2017 and 2018 do not support any allegation in the complaint.

### E.    Fidelity National Title Agency and Myriam Silver.

**¶23**    For Marceaux's claim against Fidelity and Silver, her complaint alleged – without explanation – that Fidelity "issued a title policy to Steven Baker knowing he was not on title."  We understand that allegation was premised on two deeds of trust attached to the complaint showing that Baker offered the home as security for two loans he received in June 2005, a year before he sold the home to Marceaux.  Both deeds of trust identified Fidelity as the trustee; neither, however, referenced Fidelity as the title insurer.  According to the complaint, it was these two loans Baker obtained in 2005 – the complaint called the loans a "Cash back SCAM" – "that created this mess in the first place."  Without providing any specifics, the complaint asserted that Fidelity committed fraud through its involvement in those two loan transactions.

**¶24**    As for Fidelity's relationship with Marceaux, the complaint further alleged that Fidelity closed her title-insurance claim by procuring a quitclaim deed from Sanders, but "refuses to pay for any actual losses due to the loss of the Sale and loss of income from Rental income."  The complaint also asserted that, despite Fidelity's assurances, the quitclaim

deed did not provide clear title to the home because Wells Fargo wanted to take the home from her after she defaulted on her purchase money loan.

**¶25**         We agree with and adopt the reasoning of the superior court in dismissing the claim against Fidelity and Silver:

> The fraud claim against Myriam Silver and Fidelity National Title Agency, Inc. fails for the same reason as the fraud claims against Wells Fargo and Suburban Mortgage. The plaintiff has not alleged the elements of fraud against Fidelity Title "with particularity," as required by Civil Rule 9(b). She has made only broad accusations, not only in the original complaint but also in the amended complaint that followed Fidelity Title's motion to dismiss. Broad, conclusory allegations not reasonably supported by inferences from specific facts are insufficient to state a cause of action. *Cullen v. Auto-Owners' Ins. Co.*, 218 Ariz. 417, 189 P.3d 344 (2008).

> To the extent that the plaintiff claims that the title insurer negligently failed to discover the title defect, Arizona law does not permit the claim. In Arizona, a title insurance policy is not a guarantee of good title. *Centennial Development Group, LLC v. Lawyer's Title Ins. Corp.*, 233 Ariz. 147, 310 P.3d 23 (App. 2013).

> The plaintiff does not appear to allege that the manner in which the title insurer handled her claim breached the title insurance policy. She implies that the insurer should have compensated the loss she suffered when the property sale fell through, but she did not have a right to that. *See Swanson v. Safeco Title Ins. Co.*, 186 Ariz. 637, 641, 925 P.2d 1354, 1358 (App. 1995) (measure of insured's loss due to title encumbrance is cost of removing encumbrance or diminished value of property, not consequential damages such as loss of opportunity to refinance).

**¶26**         On appeal, Marceaux further argues the title policy Fidelity issued her "was fraud and failed to disclose the 8 unpaid securities owed on the title." As the superior court ruled, however, if there were "8 unpaid securities" that clouded the title, Marceaux's only remedy against Fidelity was to make a claim on her title insurance policy. A title insurance policy "pays damages, if any, caused by any defects to title that the title company

should have discovered but did not." *Swanson*, 186 Ariz. at 641. It is not a guarantee of perfect title. *Centennial*, 233 Ariz. at 149, ¶ 6.

**F.      Daniel Sanders.**

**¶27**      As explained in the excerpt from Fidelity's letter to Marceaux responding to her claim on the title insurance policy, *supra* ¶ 4, the defect at issue resulted from the failures to record conveyance deeds in 2000 from Sanders to the Phillipses and from the Phillipses to the Craigs. The complaint alleged no misrepresentation by Sanders in connection with those transactions that would support a claim of fraud. As the superior court ruled in dismissing the complaint against Sanders, the references to him in the complaint "are conflicting, confusing and conclusory." On appeal, Marceaux offers no argument to the contrary.

## CONCLUSION

**¶28**      For the reasons stated, we affirm the judgment in appellees' favor and award them their costs on appeal, upon compliance with Arizona Rule of Civil Appellate Procedure 21. Suburban and Wells Fargo ask for their attorney's fees pursuant to A.R.S. §§ 12-341 (2019), -341.01 (2019) and -349(A) (2019). Fidelity asks for fees under A.R.S. § 12-342 (2019). In our discretion, we deny the requests for fees.



AMY M. WOOD • Clerk of the Court
FILED:  AA