BUQUO v. TITLE GUARANTY & TRUST CO.—100 S. W. (2d) 997.

Eastern Section. October 24, 1936.

Petition for Certiorari denied by Supreme Court, January 27, 1937.

S. B. Smith and Williams & Frierson, all of Chattanooga, for complainant.

Cantrell, Meacham & Moon, of Chattanooga, for defendant.

McAMIS, J. This is an action upon a policy of title insurance issued to Preston H. Buquo, complainant below, by the Title Guaranty & Trust Company of Chattanooga. The case has previously been before this court upon an appeal by complainant from the chancellor's decree denying recovery. Upon that appeal the decree was reversed and the cause remanded for a reference to determine what damages, if any, Buquo suffered by reason of failure of title to the land covered by the title policy.

Upon the proof taken the master found complainant entitled to $900.18 as the amount of damages suffered with interest. Upon motion of defendant, the chancellor reduced this amount to $443, which, together with interest from the date of the filing of the bill, amounted to $578. For this amount decree was entered, and both parties have appealed to this court, the complainant because the chancellor refused to allow the full amount sued for, and the defendant because the chancellor refused to limit the amount of the recovery according to its insistence. Both parties have assigned errors broadly raising only the question of the measure of damages.

In the year 1929 complainant was the owner of a lot in Red Bank in Hamilton County, Tennessee. Having determined to construct a brick business building upon the property, he applied to the defendant, Title Guaranty & Trust Company, for a certificate of title insurance guaranteeing the lines of said lot. Said certificate was issued under date of January 10, 1929, and we held upon the previous appeal that the lines were guaranteed according to a survey made by the Betts Engineering Company. After the issuance of the certificate of title insurance, based upon said survey, complainant proceeded to construct a brick building. The rear wall of said building, 58 feet in length, was constructed upon the rear line of said lot as indicated upon the Betts' survey, as was later determined in litigation between complainant and one Lynch, the adjoining landowner. Said wall encroached upon the Lynch property from one to two feet and complainant was enjoined from completing the construction of said wall. It appears that final decree was pronounced in the Lynch case on June 30, 1930, and the bill in this case was filed on November 28, 1930, praying a recovery of $1,500, the face amount of the certificate, together with interest and the statutory penalty of 25 per cent.

Complainant's assignments of error are as follows:

"I. The court erred in refusing to allow complainant the money which he was compelled to expend in defending the law suit (the Lynch case) which was brought to try title to a portion of the land in question.

"II. The court erred in refusing to allow complainant the full value of the policy plus interest from June 30, 1930, the date the case of Lynch v. Buquo was decided.

"III. The court erred in refusing to allow the complainant the sum of $665.72 as the cost of removing the east (rear) wall, with interest from June 30, 1930 as it is shown by the greater weight of the testimony that this was the true cost of removing the said wall."

(a) With respect to the right and duty of defendant to defend actions brought against complainant, the insured, the certificate provides as follows:

"The Title Guaranty & Trust Company of Chattanooga will, and shall have the right, at its own cost, to defend the party guaranteed in all actions of ejectment or other proceedings founded upon a claim of title or encumbrance prior in date to this certificate and not excepted therein. In case any person having an interest in this certificate shall receive notice or have knowledge of any such action or proceedings, it shall be the duty of such person at once to notify the company thereof in writing, and secure to it the right to defend the action. Unless the company shall be so notified within ten days, then all liability of this company in regard to the subject matter of such action or proceeding shall cease and be determined."

We think this clause of the certificate is to be construed as requiring the company, upon notice in writing, to defend such action. However, we think the party guaranteed, in the absence of any notice from the company that it insists upon its right to defend the action, could waive this benefit under the certificate and assume the defense of the action, employing attorneys of his own selection. While the company is interested in the defense of such an action to the extent of the amount of its liability to its insured, the insured might have, and often would have, as much or more at stake than the company. For this reason insured might, in some cases, prefer to conduct the defense himself even though entitled to this benefit under the terms of the certificate.

In this case there was never any written notice of the institution or pendency of the Lynch suit, nor did complainant, at any time, peremptorily demand, in oral conversations with defendant's officials, that defendant assume the defense of the action.

On this point complainant testified that when the Lynch case was instituted he went to the president of defendant, Mr. Beck, and told him that the suit had been started; that Mr. Beck stated that he would see about the matter, and then went to see surveyors who had surveyed the Lynch property and advised complainant to

employ an attorney to defend the suit. It would seem natural, if complainant desired to have the company defend the suit, to have then demanded, or at least requested, it to employ attorneys and defend the action according to the terms of the certificate. Defendant did neither, but seemed to content himself with conferring with Mr. Beck from time to time and using him as a witness.

█ Defendant resists liability for the expense incurred by complainant in the defense of the Lynch suit upon the ground that written notice was not given by complainant as the certificate requires. We need not consider this question. We think complainant may not recover these expenses for the reason that he waived this benefit when, without any demand upon defendant to do so, he engaged attorneys of his own selection and assumed the conduct of the defense and the responsibility for it. We think he elected, for reasons satisfactory to himself, to defend the action and cannot now assume the inconsistent position of insisting upon a recovery of the expenses incurred.

We might also add that, although other items of damages are set out with some particularity in the bill, there is no mention of these expenses except a casual reference to them in connection with the right to recover the statutory penalty which is now no longer insisted upon.

██ "Where by the terms of the policy insurer is obligated to defend, at its own cost, in behalf of insured any proceedings to recover for injuries, and it refuses or fails to defend such a proceeding after proper notice thereof or to pay the indemnity, insured is entitled to recover from insurer the reasonable and necessary expenses which insured has incurred in conducting the defense, including reasonable attorney's fees, stenographers' fees, witness fees and costs. . . . A provision in the policy that no cost should be incurred without the consent of insurer does not give insurer the complete command of the action, nor does it mean that if insurer is not consulted about the case, it will not pay anything under the policy; it means that insurer is not responsible for costs incurred without its consent, unless such consent is unreasonably withheld." 36 C. J., 1090, section 66.

(b) Under complainant's second assignment of error it is insisted the chancellor erred in not allowing a recovery for the full face amount of the certificate.

The basis of this insistence is that when it was discovered that the rear wall encroached upon the Lynch property and complainant was enjoined from completing said wall, his title became so questionable that he was unable to obtain a loan upon the property to complete the building, and after the termination of the Lynch suit did not have sufficient means to remove and rebuild the wall in its proper location; that, as a result of the failure of title to the strip

of land on the rear of the lot as insured, he has ever since been financially unable to reconstruct said wall and to complete the building, and hence suffered a loss of material already used, exceeding in value the face amount of the certificate.

By the terms of the certificate, defendant agreed to "indemnify, keep harmless and guarantee Preston H. Buquo . . . against all loss or damage not exceeding $1500.00 which the said party guaranteed shall sustain by reason of defects in the title of said party guaranteed . . ."

The question of the measure of damages under guaranty certificates of this nature is treated at some length in Cyclopedia of Insurance Law (Couch), vol. 7, 6286, 6287.

It is there said, in part: "So, the measure of damages for loss of the use of part of the premises, the title to which is guaranteed against defects or encumbrances, is reimbursement for the loss sustained, which, in the case of farm property, is usually the value of the land, but in the case of city property, used for building purposes, is the value plus any additional expenditures rendered necessary by the defect."

It is further held that under such a policy, deprivation of the right to use a part of the premises for purposes contemplated by the owner is a loss for which he is entitled to recover. Pennsylvania Laundry Co. v. Land Title & Trust Co., 74 Pa. Super., 329, cited by the above text under note 6, and see 62 C. J., 1061, section 52, citing the same case under footnote 45.

Generally speaking, damages for breach of contract include only such as are incidental to or directly caused by the breach, and may be reasonably supposed to have entered into the contemplation of the parties. Pettee v. Tenn. Mfg. Co., 1 Sneed, 381, 387-389; Walker v. Ellis, 1 Sneed, 515, 522; Nashville & C. Ry. Co. v. Chumley, 6 Heisk., 325, 328; State v. Ward, 9 Heisk., 100, 132; Fort v. Orndoff, 7 Heisk., 167, 173; Winters v. Fleece, 4 Lea, 546, 551.

However, damages resulting naturally and proximately from breach of contract may include damages which result from the breach with reference to special circumstances known to the parties which existed at the time the contract was made, and it is not essential that such circumstances be expressly referred to in the contract (Machine Co. v. Compress & Storage Co., 105 Tenn., 187, 58 S. W., 270); and recoverable damages may include those which, with notice of the facts, the parties must have contemplated would result from the breach (Western Union Tel. Co. v. Green, 153 Tenn., 522, 284 S. W., 898).

Applying these principles to the case before us, we think it is clear that the recovery should be limited to the value of the land title to which failed (fixed by the decree at $75) plus the

cost of removing the wall from the Lynch property and rebuilding it upon complainant's property and, in addition, as found by the master, the sum of $25 for depreciation in materials during the pendency of the Lynch case.

It is shown that defendant knew that complainant proposed to construct a building on the lot and wanted title insurance guaranteeing the lines. We think the parties contracted with this in mind, but that it was not within the contemplation of the parties that complainant, as the result of failure of title to a small strip across the rear of the lot, would sustain the loss of materials and labor placed upon the remainder of the lot. These items are remote and contingent and in our opinion are not·recoverable under the certificate.

If complainant had rebuilt the wall upon the termination of the Lynch suit, these damages would have been avoided or, at least, greatly reduced, and his financial inability to do so is not a matter to which we can look. The second assignment of error must accordingly be overruled.

(c) Several witnesses were introduced by the respective parties before the master with respect to the cost of removing the rear wall from the Lynch property and reconstructing it upon complainant's lot. As appears from his report, the master was not satisfied with the estimates given by any of these witnesses and, upon his own initiative, took a general contractor in Chattanooga of 32 years' experience, Mr. A. F. Hahn, upon the property for the purpose of enabling him to testify. Mr. Hahn's deposition was later taken by the master, according to the caption "upon notice to solicitors." He estimated the cost· of removing the wall and replacing it at $640.72 and the depreciation of the lumber on the first floor for one year at $25. He also added, as a part of the cost of labor, $20.13 premium on compensation and public liability insurance. These two items are not included in the figure $640.72.

The master adopted Mr. Hahn's figures as the correct cost of removing and reconstructing the wall, but, upon exceptions filed by the respective parties, the chancellor finally reduced the amount allowed for removing and rebuilding the wall to $443, evidently upon the theory that one of the witnesses for complainant was willing to do the work at that figure.

Without extending this opinion by an analysis of the testimony of the several witnesses, we may say that we agree with the master that neither the testimony of the witnesses for complainant nor of those for defendant affords a satisfactory basis for fixing this cost. It is evident that the witnesses for defendant were attempting to keep the figures as low as possible, while those for complainant appear to be somewhat biased in favor of complainant.

We are impressed both with the thoroughness and manifest fairness of Mr. Hahn's estimate and his testimony based thereon.

We do not interpret the testimony of defendant's witnesses as a bid to furnish material and do the work, and there is no assurance that they would enter into a binding contract with complainant to replace the wall at the figure fixed by the chancellor or, if so, that they are solvent and could be made to perform it.

Considering the testimony of all the witnesses, including that of Mr. Hahn, we think the amount reported by the master is no more than the reasonable cost of tearing down and removing the old wall and reconstructing it upon complainant's lot. The decree to be here entered will include, as the cost of removing and rebuilding the wall, the amount of $665.72 with interest from the date of the filing of the bill, the date fixed by the chancellor in the exercise of his discretion.

What we have already said is, in the main, responsive to defendant's assignments of error.

However, it is insisted that defendant is not liable because the wall was located outside the Betts survey. It is shown that the wall was located according to stakes placed by Betts, and we concur with the master and chancellor in so holding.

Defendant's assignments of error, with the exception of the second which complains at the allowance of $49 accrued court costs in the Lynch case, are without merit. We are of opinion, however, that court costs in that case fall within the above ruling with respect to counsel fees and stenographer's expenses which we have declined to allow for the reasons pointed out above. The assignment as to this item is sustained. All other assignments of defendant are overruled. All the costs of the cause, including costs of appeal, are taxed to defendant and surety on its appeal bond.

Portrum and Ailor, JJ., concur.