630 P.2d 758

**Betty Mae HARTMAN and Charles W. Williams and his wife, Carolyn L. Williams, Cross-Defendants-Appellants,**

v.

**Olive SHAMBAUGH and First National Bank in Albuquerque, Third-Party Plaintiffs-Appellees,**

v.

**USLIFE TITLE INSURANCE COMPANY OF DALLAS, a foreign corporation, Third-Party Defendant and Intervenor-Appellee.**

No. 12639.

Supreme Court of New Mexico.

June 29, 1981.

Thomas L. Bonham, Albuquerque, for cross-defendants-appellants.

Harry O. Morris, Albuquerque, for third-party defendant and intervenor-appellee.

Hunter L. Geer, Albuquerque, for third-party plaintiffs-appellees.

## OPINION

FEDERICI, Justice.

Plaintiff, Valle Grande Real Estate Development Corporation (Valle Grande), commenced this action to quiet title to certain realty and was awarded a partial final decree against the defendants, Betty Mae Hartman, Charles W. Williams and his wife, Carolyn L. Williams (Williams), against the defendant Olive Shambaugh (Shambaugh), and against certain other defendants not parties to any further proceedings.

Thereafter, defendant Shambaugh, joined by the defendant First National Bank as Trustee for Olive Shambaugh, filed a cross-claim for a declaratory judgment against Williams and a third-party complaint against USLife Title Company of Dallas (USLife Title), alleging that by agreement Shambaugh had sold to Williams, and US-Life Title had insured the title in Williams to a portion of the realty, which realty the trial court subsequently determined was owned by Valle Grande; that title to an additional parcel sold by Shambaugh to Williams, and also insured by USLife Title, was in doubt. Shambaugh sought a declaratory judgment concerning the liability, if any, of Shambaugh to Williams and the amount of insurance coverage afforded by USLife Title.

USLife Title then filed a complaint in intervention, naming Williams and Shambaugh as parties, asking the court to determine and establish the respective rights, duties, obligations and liabilities of the parties, and enter judgment accordingly.

After answers and various other pleadings had been filed and the depositions of Williams and Shambaugh had been taken, the court entered a declaratory judgment, holding that the title to the lands remaining in Williams had value equal to or in excess of the difference between the amount paid to Shambaugh by Williams and the amount received from other sources by Williams. The court ordered that Williams be granted title to the land remaining in Williams' name free of any security interest of Shambaugh but without any warranty of title from Shambaugh. The court also ordered that the balance of the debt from Williams to Shambaugh be cancelled.

Williams filed an affidavit setting forth that 1.1064 acres upon which title had failed and which acreage was insured by USLife Title had a value of $35,000 at the time he acquired the property; $50,000 when he first discovered any adverse claim; and $80,000 at the time the affidavit was filed. No counter-affidavits were offered or filed nor do any of the pleadings by USLife Title or any of the other parties allege or refer to any other evidence of value of the property upon which title failed.

Based upon the record and the evidence in the case, the trial court found that the value of the land was established at the date of the sale by the purchase price of $22,000. It further found that Williams had suffered no loss and therefore was not entitled to judgment against USLife Title. Williams appeals. We reverse.

The issues we discuss on appeal are:
I. Whether Williams is entitled to a judgment against USLife Title upon its policy of title insurance in an amount equal to the value of the property upon which title failed, up to the amount of the policy limits of $30,000.
II. Whether the value of the property lost should be determined as of the date of purchase, the date of discovery of the title defect by the owner, or at date of trial.

I.

Williams contends that if title fails as to any portion of insured property, the insured is entitled to receive payment from the insurer for his actual loss up to the limits of the policy.

It is undisputed that the rights and liabilities of the parties are fixed by the contract of title insurance. *See Safeco Ins. Co. of America, Inc. v. McKenna*, 90 N.M. 516, 565 P.2d 1033 (1977).

The policy involved here states:
USLIFE TITLE * * *, insures * * *, against loss or damage, not exceeding the amount of insurance * * * which the Company may become obligated to pay hereunder, sustained or incurred by the insured by reason of:
1. Title to the estate * * * being vested otherwise than as stated * * *.

Paragraph 6 states:
    (a) The liability of the Company under this policy shall in no case exceed the least of:
    (i) the actual loss of the insured claimant; or

(ii) the amount of insurance stated [$30,000].

■ Here, it is undisputed that title to a portion of the insured property failed. It appears to be uniformly held that where title to a portion of insured property fails, the insured is entitled to recover upon the loss up to the amount of insurance coverage under the policy. Annot., 60 A.L.R.2d 972 (1958). *See Burks v. Louisville Title Ins. Co.*, 95 Ohio App. 509, 121 N.E.2d 94 (1953). Here, Williams was entitled to recover for his "actual loss" up to $30,000.

In *Demopoulos v. The Title Insurance Company*, 61 N.M. 254, 298 P.2d 938 (1956), plaintiff had insured property for more than its value, and this Court held that the measure of his damages was the value of the real estate, keeping in mind there was no claim of negligence on the part of the insurer.

■ The value of the real estate has been determined in other jurisdictions in two primary manners. Annot., 60 A.L.R.2d 972, (1958). One is simply to determine the value of the property to which title failed. *Kentucky Title Co. v. Hail*, 219 Ky. 256, 292 S.W. 817 (1927). This solution may apply where the value of the entire tract is not diminished, except by the percentage loss, such as with open ranchland. It is not proper where the value of the entire tract may be disproportionately diminished, such as with urban property. As an example, in the latter situation, an entire lot may become virtually valueless because of a discovered easement bisecting the lot. In such a case, the proper measure of damages requires consideration of impairment of the value to the entire lot. This may be calculated by determining the actual value of the lot if there were no impairment and subtracting its value as impaired. The difference between the two figures is the amount of damages. *See Fohn v. Title Ins. Corp. of St. Louis*, 529 S.W.2d 1 (Mo.1975); *Buquo v. Title Guaranty & Trust Co.*, 20 Tenn.App. 479, 100 S.W.2d 997 (1936), *cert. denied*, January 27, 1937. The measure of damages also includes incidental damages "reasonably supposed to have entered into the con-templation of the parties." *Buquo, supra.* 100 S.W.2d at 1000 and citations listed therein. The value of land may be determined by the purchase price in the proper situation, but where a party maintains the value is different than that amount, the trial court should consider additional evidence. To restrict evidence on this issue to the amount paid could eliminate any beneficial bargain one of the parties might have made at the time of purchase. The actual value of property may be more or less than the purchase price. *See Fohn v. Title Ins. Corp. of St. Louis, supra.*

■ The trial court did not consider this possibility and is reversed. We remand with directions to take additional evidence upon the question of Williams' loss caused by the failure of title, and to determine the amount of his loss according to the above guidelines. Once this amount is determined, the court should enter judgment against USLife Title for that amount. Upon a new trial, the court should also consider any subrogation rights which USLife Title may have against Shambaugh.

## II.

It is necessary to pass upon the date which should be used by the trial court to determine the value of the property. It is a matter of first impression in New Mexico. The jurisdictions which have considered this question are not in agreement. It has been stated that the date the value of the property should be determined is the date of purchase, the date of the discovery of the defect, or the date of a bona fide contract of sale by the insured or present value. *See* 15 Couch on Insurance 2d § 57:186 (1966).

The cases which hold that the value must be determined as of the date of purchase do not explain the basis for their reasoning. The seminal case adopting this rule is *Glyn v. Title Guarantee & Trust Co.*, 132 App. Div. 859, 117 N.Y.S. 424 (1909). This case cites as authority for its holding, *Kidd v. McCormick, et al.*, 83 N.Y. 391 (1881). *Kidd* did not involve title insurance and is only tangential authority for the holding in

*Glyn. Glyn* was followed by *Beaullieu v. Atlanta Title & Trust Co.*, 60 Ga.App. 400, 4 S.E.2d 78 (1939). Again, no reasoning behind the decision was given. The date of purchase was again used by the court in *Securities Serv., Inc. v. Transamerica Title*, 20 Wash.App. 664, 583 P.2d 1217 (1978). In that case, the court recognized the general rule that if the defect insured against is a lien or encumbrance, the owner's loss is measured by the cost of removing the lien or encumbrance. Normally, such a cost would increase over the time subsequent to purchase. Yet, the court required recovery for failure of title to be determined from the date of purchase. No reasoning or authority was cited for this distinction.

Finally, *Murphy v. United States Title Guaranty Co.*, 104 Misc. 607, 172 N.Y.S. 243 (1918), adopted this rule, reasoning that title insurance was analogous to a covenant against encumbrances. Since the measure of damages for breach of a covenant against encumbrances was set at the date of purchase, the same rule should be used in a title insurance case.

One case looks to the date of a contract by the insured to sell the property or present value. It is *Kentucky Title Co. v. Hail, supra*. There, title to a portion of insured property failed. The court apparently determined that the terms of the policy looked to the future, and actual value was not determined at the time of purchase, but rather at the time of a recent contract of sale. The court was apparently using the contract as an indication of present value.

The remainder of the cases we have found which consider this question hold that the value of the property should be determined as of the date of discovery of the defects in the title. The reasoning behind this conclusion is best stated in *Overholtzer v. Northern Counties Title Ins. Co.*, 116 Cal.App.2d 113, 253 P.2d 116, 125 (1953):

> When a purchaser buys property and buys title insurance, he is buying protection against defects in title to the property. He is trying to protect himself then and for the future against loss if the title is defective. The policy necessarily looks to the future. It speaks of the future. * * * The insured, when he purchases the policy, does not then know that the title is defective. But later, after he has improved the property, he discovers the defect. Obviously, up to the face amount of the policy, he should be reimbursed for the loss he suffered in reliance on the policy, and that includes the diminution in value of the property as it then exists, in this case with improvements. Any other rule would not give the insured the protection for which he bargained and for which he paid.

Other authorities following this rule are: *Happy Canyon Inv. v. Title Ins. Co. of Minn.*, 38 Colo.App. 385, 560 P.2d 839 (1976), cert. denied, March 7, 1977, and *Sullivan v. Transamerica Title Insurance Company*, 35 Colo.App. 312, 532 P.2d 356 (1975).

We are convinced that the reasoning stated in these latter cases is more appropriate. It allows the insured to protect himself prospectively. We reject the reasoning in those cases which state value should be determined as of the date of purchase. It is an oblique analogy to compare title insurance to a grantor's covenant and use that measure in determining damages.

We also reject the reasoning in the case which holds that value should be determined as of the date of a bona fide contract to sell, or alternatively, by present value. Once a defect is discovered, the insured should be required to move with reasonable haste to resolve the problem. If he becomes aware of a defect but does nothing while the value of the property continues to change, he should not be allowed to reap any benefit by his inactivity. If the defect is discovered subsequent to a bona fide contract to sell, the insured should still be allowed to recover for value up to the date of discovery, since he is unaware of any defects up to that point, and has no reason to take any steps toward resolving the problem.

We do not believe that by the terms of the contract, the parties intended to have

**364**

the actual value of the property determined at some indefinite future date, set at the discretion of the insured, according to the time he makes a claim upon the policy. Here, Paragraph 3(b) of the policy states:

The insured shall notify the Company promptly in writing * * * (ii) in case knowledge shall come to an insured hereunder of any claim of title or interest which is adverse to the title to the estate or interest, as insured, and which might cause loss or damage for which the Company may be liable * * * *

The purpose of this clause is primarily to afford the company an opportunity to mitigate its damages under the claim, and to provide certainty as to the extent of outstanding claims it may be required to pay. In order to fulfill the intent of the parties in looking to the future, yet provide certainty as to liability, it is proper to determine actual value as of the date of discovery of the defects by the owner.

Here, the trial court set the value of the property as the date of purchase of the property. We reverse it on this issue and direct it to take further evidence to determine the actual value of the property on the date of discovery of the defects in the title, and to adjust the rights and liabilities of the parties accordingly.

Appellant raises other issues on appeal concerning out-of-pocket losses, evidentiary matters, and an alleged breach of duty by the Williams' corporation to Shambaugh in the transactions. The first two of these issues have been resolved in our disposition of the issues above and need no further discussion. The latter issue will not be addressed because the trial court made no findings upon it, nor was Williams' corporation a party to this suit. If Shambaugh has a cause of action against Williams' corporation, that issue is not properly addressed in this suit.

IT IS SO ORDERED.

SOSA, Senior Justice, and RIORDAN, J., concur.