# United States Court of Appeals
## For the First Circuit

No. 21-1757

IDC PROPERTIES, INC.,

Plaintiff, Appellant,

v.

CHICAGO TITLE INSURANCE COMPANY,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. John J. McConnell, Jr., U.S. District Judge]

Before

Barron, Chief Judge,
Lynch and Gelpí, Circuit Judges.

Kevin Vendituoli, with whom IDC Properties, William E.
O'Gara, Matthew C. Reeber, Aaron L. Weisman, and Pannone Lopes
Devereaux & O'Gara LLC were on brief, for appellant.
Steven E. Snow, with whom Partridge Snow & Hahn LLP and Robert
K. Taylor were on brief, for appellee.

July 21, 2022

**BARRON, <u>Chief Judge</u>.** This appeal concerns a suit under Rhode Island law by IDC Properties, Inc. ("IDC") against its title insurer, Chicago Title Insurance Company ("CTIC"). The United States District Court for the District of Rhode Island granted summary judgment to CTIC. We affirm in part and reverse in part.

## I.

We set forth below the undisputed facts relevant to this appeal. We draw them from the record and two earlier cases involving IDC and the properties at issue that were decided by the Rhode Island Supreme Court. See <u>Am. Condo. Ass'n</u> v. <u>IDC, Inc.</u>, 844 A.2d 117 (R.I. 2004) (<u>America I</u>); <u>Am. Condo. Ass'n</u> v. <u>IDC, Inc.</u>, 870 A.2d 434 (R.I. 2005) (<u>America II</u>).

## A.

In January 1988, Globe Manufacturing Co. ("Globe") recorded a declaration of condominium for the Goat Island South Condominium on twenty-three acres of Goat Island in Newport, Rhode Island. <u>America I</u>, 844 A.2d at 120. Two months later, Globe issued the First Amended and Restated Declaration (the "FAR Declaration"), which superseded the initial declaration of condominium. <u>Id.</u>

The FAR Declaration -- which the parties agree is the operative one for purposes of this appeal -- provided that the Goat Island South Condominium included five "Master Units." The FAR Declaration defines the term "Master Unit" to "mean a physical

- 2 -

portion of the Goat Island South Condominium designated for separate ownership or occupancy or designated as a Sub-Condominium."  The FAR Declaration defines a "Unit," by contrast, to "mean a physical portion of a Sub-Condominium designated for separate ownership or occupancy."

Three of the Master Units contained independent condominiums (the "Sub-Condominiums") and are not at issue here. Two other units -- which the parties ultimately called the "West Unit" and the "South Unit" and which are at issue here -- contained only undeveloped land.  Id.

Rhode Island's Condominium Act defines the relevant procedures for the creation of condominiums and governs important aspects of their operation once created.  The Act defines a "unit" as "a physical portion of the condominium designated for separate ownership or occupancy."  R.I. Gen. Laws § 34-36.1-1.03(28).  By those terms, both "Units" and "Master Units" under the FAR Declaration qualify as a "unit" under the Act.  Cf. America II, 870 A.2d at 438-39 (discussing development rights in the FAR Declaration that provided for the creation of Master Units by asking whether "valid units were created . . . through IDC Properties' 'exercise' of its development rights in 1994" (emphasis added)).  Under the Act, "all portions of a condominium other than the units" are "[c]ommon elements."  R.I. Gen. Laws § 34-36.1-1.03(4).  Common elements are subject to the common

ownership, use, and control of each unit owner.  America II, 870 A.2d at 443; cf. America I, 844 A.2d at 120 n.5 (explaining that the declaration of condominium of one of the sub-condominiums defines "common elements" to include "property normally in common use by the Unit Owners").

The Act also references certain types of "special declarant rights" that declarants of condominiums may reserve in the declaration of condominium.  These may include the right to "[c]omplete improvements" in the condominium or the right "[t]o exercise any development right."  R.I. Gen. Laws § 34-36.1-1.03(26).  Pursuant to a "[d]evelopment right[]," a declarant may take certain specified actions, including "creat[ing] units, common elements, or limited common elements within a condominium."  Id. § 34-36.1-1.03(11).

In the FAR Declaration, Globe reserved a development right to create in the West Unit a condominium of not more than eight residential units.  Globe did not reserve an equivalent development right, however, for the South Unit.  IDC separately reserved the right "to construct additional buildings and other improvements on any Master Unit."

The Goat Island South Condominium also included other land that was not part of any Master Unit, including land designated the "Reserved Area."  In the FAR Declaration, Globe reserved a development right to withdraw the Reserved Area from

the Goat Island South Condominium and hold it in fee simple, or, alternatively, to convert the Reserved Area into a sixth Master Unit.

The FAR Declaration provided that the development rights that it reserved expired on December 31, 1994. It further provided that they could be exercised through that date.

In 1992, Globe transferred all of its interests in the Goat Island South Condominium to Island Development Corporation. Island Development Corporation (which should not be confused with IDC, the plaintiff and appellant in this case) held those interests for the next two years.

In April 1994, as the December 31, 1994 deadline for exercising the development rights in the FAR Declaration approached, Island Development Corporation recorded the Third Amendment to the declaration of condominium. The Third Amendment purported, in relevant part, to postpone the date on which the development rights would expire to December 31, 1999. America I, 844 A.2d at 123.

On October 19, 1994, IDC acquired Island Development Corporation's interests in the Goat Island South Condominium. Id. at 122 n.9. IDC then purchased a title insurance policy from CTIC, effective October 21, 1994 (the "Policy"). That policy insured against up to $10 million of "loss or damage" incurred by a defect in "[a]ll right, title, and interest in" the South Unit, West Unit,

and "development and special declarant's rights in and to" the Goat Island South Condominium "as created by the Declaration of Condominium dated as of January 12, 1988." The Policy included exclusions for "[d]efects, liens, encumbrances, adverse claims or other matters . . . created, suffered, assumed or agreed to by the insured claimant" or "attaching or created subsequent to Date of Policy." The Policy also included a condominium endorsement.

IDC adopted the Fourth and Fifth Amendments to the declaration of condominium on November 15, 1994, and December 28, 1994, respectively. America I, 844 A.2d at 123-24. Both amendments, like the Third Amendment, purported in relevant part to extend the date on which the development rights would expire, ultimately to December 15, 2015. Id. at 123-24, 124 n.11.

On December 29, 1994, IDC recorded the Sixth Amendment to the declaration of condominium. Id. at 131. In the Sixth Amendment, IDC purported to exercise the development right that it had reserved in the Reserved Area. IDC did so through the Sixth Amendment by converting the Reserved Area into the "North Unit." No development in the Reserved Area had occurred as of that time, however. Id. at 125.

In 1997, IDC sought insurance for its title to the North Unit from both Commonwealth Land Title Insurance Co. ("Commonwealth") and CTIC. On December 12, 1997, Commonwealth offered to issue a $5 million title insurance policy for the North

Unit. Three days later, CTIC declined to make an offer of insurance for IDC's title to the North Unit. IDC accepted Commonwealth's offer. Commonwealth Land Title Ins. Co. v. IDC Props., Inc., 547 F.3d 15, 18-19 (1st Cir. 2008). In 1998, IDC constructed a banquet hall in the Reserved Area. America I, 844 A.2d at 125.

**B.**

On May 29, 1999, the associations of the Sub-Condominiums filed suit against Island Development Corporation, IDC, and Thomas Roos, the president of both organizations, in Rhode Island state court. Id. at 119, 125. The plaintiffs alleged that Island Development Corporation and IDC had not properly followed the procedures set forth in the Rhode Island Condominium Act when they extended the deadline for the development rights to be exercised in the Third, Fourth, and Fifth Amendments and that, in consequence, each of those amendments was void ab initio. Id. at 125 & n.13. The plaintiffs then further alleged that, due to IDC's failure to comply with the Condominium Act, IDC's "reserved interest in the undeveloped units ceased to exist, thus implying that fee simple title then vested in" the associations of the Sub-Condominiums. Id.

The plaintiffs sought a declaration that the Third, Fourth, and Fifth Amendments were "void ab initio" and a declaration that IDC "no longer had any ownership interest or

- 7 -

voting rights in the disputed master units," or, alternatively, "compensatory damages." Id. at 125 n.13. Their complaint also included additional counts not relevant to this appeal. Id.

The state court granted partial summary judgment to the plaintiffs. Id. at 126. That judgment extended to all of the counts relevant to this appeal. Id. at 125. IDC appealed to the Rhode Island Supreme Court, which affirmed the entry of summary judgment in America I. Id. at 135.

The Rhode Island Supreme Court held in that case, in relevant part, that IDC's attempts to extend the deadline to exercise the development rights through the Third through Fifth Amendments to the declaration of condominium had been futile, because "the Third, Fourth, and Fifth Amendments were void ab initio" under Rhode Island law (the validity of the Sixth Amendment had not been challenged). Id. at 125 n.12, 130. The Rhode Island Supreme Court explained that this was so because the Rhode Island Condominium Act required that extensions of the time limit to exercise a development right be approved by unanimous consent of all the unit owners of the Goat Island South Condominium. Id. at 128-29. Because the Rhode Island Supreme Court found that IDC -- despite contending otherwise -- had not obtained such unanimous consent, it concluded that the state trial court did not err in deeming the challenged Amendments void ab initio. Id. at 129-30.

The Rhode Island Supreme Court then turned to the claim by the sub-condominium associations seeking a declaration that they owned the "disputed parcels" of the Goat Island South Condominium in fee simple. Id. at 131. The Court found that IDC's development rights in the South, West, and North Units "automatically expired when [IDC] failed to exercise them on or before December 31, 1994," and that IDC's "improvement rights" did not give it the right to construct any buildings. Id. at 131-32. The Court then noted that the FAR Declaration had granted IDC and its predecessors "a limited period to develop certain parcels of land within the condominium, but it could not convey title to the airspace if the development rights were not exercised." Id. at 132. Accordingly, the Court concluded that "the disputed portions vested in fee simple in 'the unit owners as tenants in common in proportion to their respective undivided interests.'" Id. at 132-33 (quoting Dibiase v. Jacovowitz, 682 N.E.2d 1382, 1385 (Mass. App. Ct. 1997)).

The defendants petitioned the state Supreme Court for reargument, and the Court granted the petition. On April 8, 2005, the Court issued an opinion "clarify[ing] certain aspects of [its] earlier opinion" but "reaffirm[ing] [its] holdings in their entirety." America II, 870 A.2d at 436.

The Court explained that the Rhode Island Condominium Act imposed a "substantial completion" requirement for the

- 9 -

creation of a "unit," pursuant to which "all structural components and mechanical systems of [a] building containing or comprising any units" must be "substantially completed in accordance with the plans of that building" before "[a] declaration or an amendment to a declaration adding units to a condominium" may be validly recorded, id. at 439 (quoting R.I. Gen. Laws § 34-36.1-2.01(b)). The Court further explained that the "substantial completion" requirement had not been met prior to the creation of the South, West, or North Unit. It thus held that because none of those units had been validly created, all of them were now "common elements," within the meaning of the Rhode Island Condominium Act, see id. § 34-36.1-1.03(4), of the Goat Island South Condominium. America II, 870 A.2d at 440, 441-42.

## C.

On July 8, 2005, following the Rhode Island Supreme Court's America II decision, IDC submitted a claim to CTIC under the Policy. It sought coverage under the Policy for the loss or damage to IDC's "right, title, and interest" in the Goat Island South Condominium as a result of the America I and America II decisions. CTIC denied coverage on January 28, 2008.[1]

---

[1] IDC states in its brief that coverage was denied on January 28, 2009, but this appears to be an error. We also note that, while IDC's appeal to the Rhode Island Supreme Court was pending, Commonwealth filed suit in the District of Rhode Island against IDC, seeking a declaratory judgment "that any losses resulting from the annulment or expiration of IDC's development rights were

- 10 -

IDC filed suit against CTIC in Newport County Superior Court, and CTIC removed the case to the District of Rhode Island on December 29, 2009 based on diversity jurisdiction. IDC alleged the following counts under Rhode Island law: a breach of contract count, a breach of the duty of good faith and fair dealing count, a count under state statutory law, and an unjust enrichment count. It sought damages under the Policy, punitive damages, and attorneys' fees.

Following discovery, CTIC moved for summary judgment. The District Court denied the motion. CTIC then filed several motions in limine, including one seeking to strike IDC's expert report. The District Court granted that motion.

CTIC thereafter moved for summary judgment again on the ground that IDC could not prove damages without expert testimony. IDC responded by submitting a supplemental expert report, which the District Court granted it leave to file, with its response to the motion.

---

excluded from coverage under the Policy, that Commonwealth was not liable to IDC for any such losses, and that the Policy provides no coverage for IDC's title." Commonwealth, 547 F.3d at 19-20. In 2007, the District Court concluded that Commonwealth's Policy was void under Rhode Island law, in part because it found that IDC had made material nondisclosures in seeking it. Id. at 20, 21. A panel of our court affirmed based on that same finding. Id. at 22-23.

- 11 -

CTIC again filed a motion in limine seeking to exclude the supplemental expert report. The District Court denied the motion in limine.

Nearly three years passed without further progress in the litigation. On September 29, 2020, CTIC filed a third motion for summary judgment. The District Court granted the motion with respect to claims that concerned title insurance for the North Unit but denied the motion with respect to claims that concerned title insurance for the South and West Units. CTIC filed a motion for reconsideration. The District Court granted the motion and entered final judgment in favor of CTIC as to the claims regarding all three units.

IDC now appeals and challenges the entry of summary judgment with respect to its claims that concern each of the three units. It also challenges the District Court's grant of CTIC's motion in limine to exclude IDC's original expert report insofar as it succeeds in overturning the District Court's grant of summary judgment.

## II.

"Summary judgment is appropriate if 'no reasonable factfinder, examining the evidence and drawing all reasonable inferences helpful to the [plaintiff], could resolve the dispute in the plaintiff['s] favor." St. Paul's Found. v. Ives, 29 F.4th 32, 40 (1st Cir. 2022) (internal quotation marks omitted) (quoting

Hill v. Walsh, 884 F.3d 16, 21 (1st Cir. 2018)).  We review the District Court's application of this standard de novo.  Forsythe v. Wayfair Inc., 27 F.4th 67, 72 (1st Cir. 2022).  We address the issues that relate to the claims that concern the North, South, and West Unit in that order.

**A.**

We start with IDC's challenge to the District Court's grant of summary judgment to the defendants as to IDC's claims that concern the North Unit.  The District Court reasoned that it is clear from the record that the title that IDC's Policy covered included IDC's right by December 31, 1994 either to withdraw the Reserved Area from the Goat Island South Condominium or to convert the Reserved Area into a Master Unit.  But, the District Court determined that, under the Rhode Island Supreme Court's decisions in America I and II, IDC could exercise this conversion right consistent with the Condominium Act only by first having substantially completed "all structural components and mechanical systems of [a] building containing or comprising" the North Unit. R.I. Gen. Laws § 34-36.1-2.01(b).  The District Court further determined that, because the record indisputably shows that IDC had not substantially completed any buildings that would have comprised the North Unit before IDC converted the Reserved Area into the North Unit, it is indisputable that IDC "just did not

- 13 -

exercise its [development right] correctly -- and there is no insurance against that."[2]

IDC contends on appeal that the District Court erred in so ruling. It argues that the record supportably shows that CTIC insured title that had "a latent and intrinsic defect" because the record supportably shows that IDC "never could have obtained the result the insured Development Right provided." IDC contends that is so because "the result of exercising [its] insured Development Right . . . was prohibited by the Condominium Act."

IDC emphasizes that it insured title to a development right that included "the right to create a Master Unit consisting of the airspace above the 7.5-acre Reserved Area." But, IDC asserts that the development right was void at the time CTIC insured IDC's title, given the construction of the Condominium Act in America I and II.

IDC appears to premise this "latent defect" theory on the understanding that the Rhode Island Supreme Court's rulings in America I and America II compel the conclusion that "the result of exercising [its] insured Development Right . . . was prohibited by the Condominium Act." That premise is mistaken, however. The Rhode Island Supreme Court did not hold in either case that the

_____

[2] The District Court also granted summary judgment as to IDC's claims regarding the North Unit on the alternative ground that "there is no coverage because the loss was caused by a defect IDC . . . created, and therefore Policy exclusion 3(a) applies."

- 14 -

Condominium Act barred IDC from creating a Master Unit of an airspace <u>after</u> buildings containing or comprising the Master Unit have been substantially completed.  See <u>America II</u>, 870 A.2d at 439, 441-42.  It held only that the Condominium Act prohibited IDC from creating such a Master Unit <u>before</u> substantially completing the buildings that comprise or contain it.  <u>Id.</u>

IDC contends, in the alternative, that CTIC insured through its title insurance policy IDC's right to create a Master Unit on which development could then occur (hence, giving value to the right to create the Master Unit) without first having satisfied the substantial completion requirement.  Here, IDC argues that, even though that right was void when insured under the Rhode Island Condominium Act as construed in <u>America I</u> and <u>America II</u>, CTIC did insure that very right through the title insurance policy that IDC purchased.  And thus, the argument proceeds, CTIC provided title insurance to a development right that contained a latent defect by insuring a right that the law did not recognize.

In service of this contention, IDC points to evidence in the record that it argues supportably shows that it reasonably believed that it could record an amendment creating a new unit in the Reserved Area without having satisfied the substantial completion requirement with respect to that unit.  But, Rhode Island law does not permit us to look at one party's belief about the content of an insurance contract to determine its content.

Instead, Rhode Island law directs us "when examining an insurance policy," to "appl[y] the rules for construction of contracts," and those rules establish that we must rely first on the "literal language of the policy," and "depart from" it only if we "find[] that the policy is ambiguous." Van Hoesen v. Lloyd's of London, 134 A.3d 178, 181 (R.I. 2016) (quoting Allstate Ins. Co. v. Ahlquist, 59 A.3d 95, 98 (R.I. 2013)); see also Koziol v. Peerless Ins. Co., 41 A.3d 647, 651 (R.I. 2012) (looking to all connected documents "integrated within the four corners of" a homeowner's insurance contract to determine the scope of coverage); Rivera v. Gagnon, 847 A.2d 280, 284 (R.I. 2004) (looking to "the four corners of" a contractual agreement to determine if it is ambiguous).

IDC does not develop any argument that the Policy is ambiguous in the relevant respect, such that it could be understood to be contending that parol evidence shows that the Policy covers the kind of development right that is the predicate for its latent defect theory. IDC instead appears to be making a quite different contention -- that the plain terms of the Policy insured the right that it claims that it reasonably believed that it had, which is the right to create a unit by recording an amendment without first satisfying the substantial completion requirement.

Here, IDC directs our attention to Schedule A of the Policy in conjunction with sections 2.3 and 6.3(b) of the FAR Declaration. Schedule A states that "all right, title, and

interest" in the Goat Island South Condominium, "as created by" the FAR Declaration is insured. Schedule A also makes clear that the development right to create the North Unit is insured.

In referring to the "right, title, and interest . . . as created by" the FAR Declaration, Schedule A does not itself address whether the "right, title, and interest" is subject to the substantial completion limitation or not. But, IDC contends that Section 6.3(b) of the FAR Declaration shows what IDC seeks to show.

That section gives IDC "the right to convert the Reserved Area into a Master Unit owned by the Declarant on or before December 31, 1994" and further provides that "[s]uch conversion shall be effected by the Declarant executing and recording an amendment to this Master Declaration providing for such conversion." But, we do not see how Section 6.3 supports IDC's position, as nothing in the text of that provision addresses whether the "right" referenced in Section 6.3(b) is the right that IDC claims that it reasonably believed that it possessed -- namely, to create the North Unit without first satisfying the substantial completion requirement. Thus, this provision of the FAR Declaration does not clearly show that the Policy insures any such right.

IDC does also point to Section 2.3 of the FAR Declaration. But, in purporting to provide IDC with the perpetual right "to construct additional buildings and other improvements on

any Master Unit" that it owns, Section 2.3 speaks only to IDC's rights with respect to a validly created Master Unit. It does not purport to provide IDC any rights with respect to the creation of a Master Unit. So, it, too, is of no help to IDC.

Finally, IDC points to two provisions of the Policy's condominium endorsement. But, neither one shows what IDC needs it to show.

Pursuant to the first provision, CTIC "insures against loss or damage sustained by reason of [t]he failure of the unit[s] identified in [the Policy] . . . to be part of a condominium within the meaning of condominium statutes of [Rhode Island]" (flush language). But, the provision applies only to the condominium's "units" as set out in the Policy, and the Policy does not list the North Unit as a "unit" because IDC had not yet attempted to create it when the Policy was issued. Thus, because there was no "failure of [a] unit identified in [the Policy]," this provision does not support IDC's argument.

Pursuant to the second provision, CTIC insures against "[t]he failure of the [FAR Declaration] to comply with the requirements of the [Rhode Island Condominium Act] to the extent that such failure affects the title to the unit[s]." IDC argues that there was such a failure here, because the Rhode Island Supreme Court made clear, via America I and America II, that the Condominium Act bars the creation of an airspace Master Unit before

the buildings containing or comprising that Master Unit have been substantially completed. But, as we have already explained, although America II holds that IDC did not comply with the substantial completion requirement, see 870 A.2d at 440-42, neither it nor America I holds that it was impossible for IDC to have so complied when it created the North Unit. Accordingly, IDC's "title to the [North U]nit" was not "affect[ed]" because of "[t]he failure of the [FAR Declaration] to comply with the requirements of the" Condominium Act. Indeed, the FAR Declaration is silent as to the substantial completion requirement.

Thus, although IDC asserts that the Policy's terms in and of themselves suffice to show that it insured the right that it claims, we cannot agree. We add only that, to the extent that the Policy's terms might be thought to be ambiguous as to what kind of development right was insured in the relevant respect -- and we do not mean to suggest that they are -- IDC offers no basis for concluding that the ambiguity must be resolved in its favor or even that there is a genuine issue of material fact as to whether it should be on this record. Thus, we cannot overturn the grant of summary judgment in favor of the defendants on any such basis. Accordingly, we reject IDC's challenge to the District Court's

grant of summary judgment to CTIC with respect to IDC's claims concerning the North Unit.[3]

## B.

We turn next to IDC's claims concerning the South Unit. The parties agree that CTIC insured title to the South Unit and that the Policy covered IDC's loss of that title. CTIC nonetheless moved for summary judgment below on the ground that IDC suffered no damages from its loss of title to the South Unit because it could not develop the South Unit and so its title to it had no value.

The District Court initially declined to grant summary judgment to CTIC on IDC's claims based on the South Unit. It determined that IDC "always had, and never lost, its right to improve" that "unit[]." But, CTIC then moved for reconsideration, and the District Court granted the motion. The District Court reasoned that its earlier decision had failed to "consider the Rhode Island Supreme Court's earlier determination that IDC . . . could not build houses on the units as improvements," but rather

---

[3] We note as well that IDC develops no argument that the Policy must be understood to insure the right to create the Master Unit in airspace without having substantially completed any development of the area for the distinct reason that it was practically impossible for IDC, having acquired its interest in the Goat Island South Condominium approximately two months before the right to create the North Unit was set to expire, to substantially complete any buildings containing or comprising the North Unit. Thus, any such argument is waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

- 20 -

required a development right -- which it did not have for the South Unit -- to build buildings (citing America II, 844 A.2d at 132). The District Court concluded that the "economic value" of the South Unit was thus "zero" because IDC could not develop it.

IDC argues that the District Court erred in so ruling because it "improperly accounted solely for the value of the South . . . Unit as diminished by the very defect the Policy insured against -- which was the risk that the rights insured under the Policy would be damaged or lost because they did not comply with the Condominium Act" (emphasis omitted).

Section 2.3(b) of the FAR Declaration reserves to IDC, as the owner of the South Unit, the right to "construct buildings and other improvements" in that unit in perpetuity. To be sure, the Rhode Island Supreme Court has made clear that IDC does not in fact have the right to "construct buildings" there in perpetuity, because of how that court has construed the Condominium Act. See America II, 870 A.2d at 442-43; America I, 844 A.2d at 132. But, the fact that IDC is barred from doing so under Rhode Island law is not pertinent to whether CTIC insured IDC's right to do so. And the answer to that question is not to be found in the Rhode Island Supreme Court's rulings in America I or II but in the Policy, which, as we have explained, necessarily requires us to consult the FAR Declaration to determine what "right, title, and interest" is insured.

CTIC does not dispute that the FAR Declaration did purport to reserve to IDC the right, as the owner of the South Unit, to construct buildings in the South Unit in perpetuity (notwithstanding that Rhode Island law barred IDC from reserving such a right in perpetuity). After all, Section 2.3 could not be clearer in stating that IDC reserved the right to "construct buildings" in the South Unit as the owner of it, as that provision states that the owner of the South Unit "may construct buildings and other improvements . . . located within the boundaries of the" South Unit. And while CTIC does argue that "the Policy did not insure that IDC could develop the vacant South Unit in ways that did not comply with the Condominium Act," it points to no provision in the policy to support that limitation on its coverage. Nor, as we have explained, does the text of the Policy support CTIC's argument.

The question thus becomes what value, if any, inhered in the title in consequence of the right to construct buildings in the South Unit having been reserved in the FAR Declaration. To determine that, though, we do not look to whether the right lawfully could have been exercised under the Condominium Act. And that is because the suit here concerns insurance to title, and, in light of the FAR Declaration, the Policy did insure title to real property with the right that the Condominium Act renders void under America I and America II. Thus, we must look instead to what

- 22 -

record evidence there is, if any, about the value of IDC's title to the South Unit insofar as IDC also held the right to construct buildings on that Unit. See Van Hoesen, 134 A.3d at 181 (directing us to look to "the literal language of [an insurance] policy absent a finding that the policy is ambiguous" (quoting Ahlquist, 59 A.3d at 98); cf. id. at 181-83 (declining to depart from the policy's literal language to conform that language to a statutory requirement not directly "impose[d]" on insurance policies); Laabs v. Chi. Title Ins. Co., 241 N.W.2d 434, 513 (Wis. 1976) (holding that, where an insured lost a portion of its real property in a quiet title action, a title insurer, "having contracted to insure against a title defect . . . cannot now claim that the insured has suffered no loss by reason of the fact that the title to the disputed property was defective"); Wheeler v. Reese, 835 P.2d 572, 577-78 (Colo. App. 1992) (same); L. Smirlock Realty Corp. v. Title Guar. Co., 469 N.Y.S.2d 415, 425 (App. Div. 1983) (same); Foehrenbach v. German-Am. Title & Tr. Co., 66 A. 561, 563 (Pa. 1907) (same, because "the real subject of insurance is not the concrete thing, but the interest which the one to be indemnified has in the concrete thing").

Were there no evidence to show that the right in question -- which is to say, the right that the Policy insured -- gave the title value, summary judgment would be warranted. But, there is plainly evidence in the record from which a value could be assigned

to title to the South Unit provided that the title owner had the right to construct buildings on the South Unit. As IDC explains, and as CTIC and the District Court acknowledged, the expert report that IDC submitted to the District Court makes such a calculation based on the development of the buildings allowed in the FAR Declaration, along with market factors and the particular characteristics of the South Unit. Thus, we must reverse the grant of summary judgment to CTIC as to IDC's claims that concern the South Unit.

## C.

We now take up IDC's challenge to the grant of summary judgment to the defendants as to IDC's claims with respect to the West Unit, the final Master Unit at issue. The analysis is much the same as our analysis of IDC's challenge to the grant of summary judgment to CTIC on its claims with respect to the South Unit.

Section 2.3(b) of the FAR Declaration by its plain terms gives IDC the right, as owner of the West Unit, to construct buildings on it. CTIC does not contend otherwise. The record also provides evidence from which a value could be assigned to the right to construct building in that unit: the expert report that, as IDC explains and as CTIC acknowledges, calculates the value of the West Unit based on the development of the buildings allowed in the FAR Declaration, the regional real estate market, and other distinctive features of the West Unit. And although CTIC argues

- 24 -

here, too, that it "did not insure that IDC could develop the vacant West Unit in ways that did not comply with the Condominium Act," it does not cite to any such exception in the policy itself. Thus, here, too, we conclude that the District Court erred in granting summary judgment.

## III.

Because the District Court incorrectly determined that there was no genuine issue of material fact as to whether IDC lost nothing of value when it lost title to the South and West Units, we must also address IDC's challenge to the District Court's grant of CTIC's motion in limine to exclude the first expert report that IDC submitted. That report calculated the value of each unit in 2005, the date the Rhode Island Supreme Court decided America II.

IDC explains that the report used that date to make the calculation of value because it was "the date the title defect was fixed and determined with finality." When the District Court granted CTIC's motion in limine to exclude this expert report, IDC submitted a revised expert report that calculated the value of each unit in 1997. That report found that each unit was worth less than half as much in 1997 as it was in 2005. Thus, the District Court, by granting CTIC's motion in limine, prevented IDC from entering evidence in the record of the higher valuations.

"We review a district court's decision to exclude evidence on a motion in limine for abuse of discretion." Ellicott

- 25 -

v. Am. Cap. Energy, Inc., 906 F.3d 164, 172 (1st Cir. 2018). A "material error of law" is necessarily an abuse of discretion, United States ex rel. Jones v. Brigham & Women's Hosp., 678 F.3d 72, 83 (1st Cir. 2012) (quoting Downey v. Bob's Disc. Furniture Holdings, 633 F.3d 1, 5 (1st Cir. 2011)), and we review legal questions de novo, United States v. Pires, 642 F.3d 1, 10 (1st Cir. 2011); see also United States v. Padilla-Galarza, 990 F.3d 60, 73 (1st Cir. 2021).

The District Court granted the motion in limine for two reasons. First, it determined that the expert should have used 1997 as its reference date for determining the value of title to the units. It did so because, although the Rhode Island Supreme Court had not resolved the issue, the District Court "believe[d] that the Rhode Island state courts would . . . follow" Overholtzer v. Northern Counties Title Insurance Co., 253 P.2d 116 (Cal. Dist. Ct. App. 1953), which the District Court described as "the leading case."

In Overholtzer, the California District Court of Appeal held that "the proper time for the valuation of . . . property for purposes of damages" in cases where liability is "measured by diminution in the value of the property caused by [a] defect in title" is "the date of the discovery of the defect." Id. at 125. The District Court determined that Overholtzer "is consistent with

and most logically fits in within the Rhode Island legal scheme on title insurance and valuation."

The District Court also granted the motion in limine for another reason. It "believe[d] that [IDC's] expert's opinion is based on an assumption that is contrary to the" Condominium Act. Specifically, it found that the expert had ignored the "unanimity requirement . . . that would limit possible development on the land."

IDC argues that both of the District Court's grounds for granting the motion were mistaken. But, even assuming that IDC is right that the District Court mistakenly applied the unanimity requirement, IDC advances no persuasive argument for us to depart from the District Court's decision to follow Overholtzer.

IDC does contend that the Policy itself determines when the value of the property should be measured and that it does so in a way that is at odds with Overholtzer. IDC relies here on Section 9(b) of the Policy's "Conditions and Stipulations," which provides that, "[i]n the event of any litigation . . . [CTIC] shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title as insured." But, the provision speaks to the date on which CTIC is responsible for paying compensation to IDC under the Policy, not the date from which that compensation should be measured.

- 27 -

Nor does this language in Section 9(b) create an ambiguity that would require us to look beyond the text of the policy to determine its meaning. The case and treatise to which IDC cites in arguing to the contrary do not show otherwise. See Miller v. Ticor Title Ins. Co., 93 P.3d 88, 92 (Or. Ct. App. 2004); Joyce D. Palomar, Title Insurance Law § 10:16 (2021).

IDC alternatively contends that the District Court incorrectly determined that the Rhode Island Supreme Court would apply Overholtzer, because a court applying Rhode Island law that finds an insurance contract "ambiguous" must "strictly construe[] [the ambiguity] in favor of the insured." Koziol, 41 A.3d at 649-50. So, IDC argues, given that the Policy does not set the date by which the value of property should be measured, Rhode Island law requires us to find in in favor of IDC with respect to the relevant date because IDC is the insured.

But, although IDC identifies two states that follow its preferred approach, see Whitlock v. Stewart Title Guar. Co., 732 S.E.2d 626, 627-28 (S.C. 2012) (holding that, because "'[a]mbiguous or conflicting terms in an insurance policy must be construed liberally in favor of the insured and strictly against the insurer,'" where an "insurance contract does not unambiguously identify a date for measuring the diminution in value of the insured property or otherwise unambiguously provide for the method of valuation as a result of the title defect, such ambiguity

- 28 -

requires a construction allowing for the measure of damages most favorable to the insured" (quoting USAA Prop. & Cas. Ins. Co. v. Clegg, 661 S.E.2d 691, 696 (S.C. 2008))); First Am. Title Ins. Co. v. Johnson Bank, 372 P.3d 292, 298 (Ariz. 2016), IDC provides no persuasive reason for us to conclude that Rhode Island would follow suit and reject the rule set forth in Overholtzer, despite that rule being the majority one, see First Am. Bank v. First Am. Transp. Title Ins. Co., 759 F.3d 427, 433 (5th Cir. 2014) (noting that "date-of-discovery is the majority rule for owners' [title insurance] policies"); Whitlock, 732 S.E.2d at 629 (Pleicones, J., dissenting); First Am. Title Ins. Co. v. 273 Water St., LLC, No. HHDCV084041234S, 2012 WL 335845, at *3 (Conn. Super. Ct. Jan. 5, 2012).[4]  And that is especially so when the Overholtzer rule is applied even in jurisdictions that also apply the rule that ambiguities in insurance policies must be construed in favor of the insured.  See, e.g., Sullivan v. Transamerica Title Ins. Co., 532 P.2d 356, 358 (Colo. App. 1975) (applying the Overholtzer rule); Vill. Homes of Colo., Inc. v. Travelers Cas. & Sur. Co., 148 P.3d 293, 296 (Colo. App. 2006) ("[W]hen the terms of an insurance policy are ambiguous, they must be strictly construed

---

[4] Although not every jurisdiction outside of these two follow Overholtzer, see, e.g., Old Republic Nat'l Title Ins. Co. v. RM Kids, LLC, 835 S.E.2d 21, 27 n.4 (Ga. Ct. App. 2019) (using the date the insured acquired the covered property), we are not aware of any other states that have adopted IDC's preferred approach.

- 29 -

against the insurer and in favor of the policyholder."); Hartman v. Shambaugh, 630 P.2d 758, 761-62 (N.M. 1981) (applying the Overholtzer rule); United Nuclear Corp. v. Allstate Ins. Co., 285 P.3d 644, 648 (N.M. 2012) ("[A] policy term . . . deemed ambiguous . . . must be construed against the insurance company as the drafter of the policy." (internal quotation marks omitted)); Miller v. Title, U.S.A., Inc. Ins. Corp. of N.Y., No. 01-A-019010CV00361, 1991 WL 24537, at *2 (Tenn. Ct. App. Feb. 27, 1991) (applying the Overholtzer rule); Hollis v. Doerflinger, 137 S.W.3d 625, 629 (Tenn. Ct. App. 2003) ("When an insurance contract is susceptible to more than one reasonable interpretation, it is considered ambiguous . . . [and] the language must be construed in favor of the insured."); Jalowitz v. Ticor Title Ins. Co., 478 N.W.2d 67 (unpublished table decision), 1991 WL 271040, at *3-4 (Wis. Ct. App. Oct. 8, 1991) (citing Allison v. Ticor Title Ins. Co., 907 F.2d 645, 651-52 (7th Cir. 1990)) (applying the Overholtzer rule); Froedtert Mem'l Lutheran Hosp., Inc. v. Nat'l States Ins. Co., 765 N.W.2d 251, 261 (Wis. 2009) ("If an insurance contract is ambiguous as to coverage, it will be construed in favor of the insured." (internal quotation marks omitted)).  For, while IDC does assert that its proposed rule is a "practical rule," we do not see why the rule set forth in Overholtzer is any less deserving of that description.  We thus affirm the District Court's grant of CTIC's motion in limine.

## IV.

The District Court's grant of partial summary judgment with respect to the North Unit is **affirmed**.  We **reverse** the District Court's grant of summary judgment with respect to the South and West Units.  The District Court's grant of CTIC's motion in limine is **affirmed**.  The parties shall bear their own costs.